Argued and submitted January 8, affirmed June 27, reconsideration denied October 3, petition for review allowed November 20, 1990 (301 Or 612)

# PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS,
*Appellant,*

*v.*

# INSTITUTIONAL ANIMAL CARE AND USE COMMITTEE OF THE UNIVERSITY OF OREGON
and the University of Oregon,
*Respondents.*

(88C-11844; CA A60341)

794 P2d 1224

Allen L. Johnson, Eugene, argued the cause for appellant. With him on the briefs was Johnson & Kloos, Eugene.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Rossman, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Appellant, People for the Ethical Treatment of Animals (PETA), is a non-profit animal protection organization with an Oregon membership of about 3,000. Respondents are the Institutional Animal Care and Use Committee, a committee of the University of Oregon created pursuant to federal law, and the university. The committee reviews all proposals for use of vertebrate animals for research at the university. In September, 1988, in order to determine whether they complied with university assurances to the federal government,[1] it reviewed a professor's grant proposals to study the auditory system of barn owls.

PETA representatives attended that meeting. The committee first met in executive session and then, in an open meeting, approved the proposals. PETA was not allowed to participate in the discussion. Afterwards, PETA's attorney contacted the committee chairperson by letter to register objections to the proceedings, and the letter was made part of the meeting's minutes.[2] PETA then sent a second letter, threatening litigation. After a response by the university, PETA filed this petition for judicial review of an order in other than a contested case. ORS 183.484. The circuit court dismissed the petition on the ground that PETA lacks standing.

PETA argues that it has standing as an "aggrieved" person[3] under ORS 183.480(1), which provides, in part:

> "Any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order, whether such order is affirmative or negative in form."[4]

---

[1] The Animal Welfare Act, 7 USC § 2131 *et seq,* and the implementing regulations require that institutions file assurances with the federal government that they comply with federal policy on the use of vertebrates in research as a condition for receiving federal funding.

[2] The minutes showing the approval apparently constitute the order. ORS 183.310(5)(b).

[3] PETA qualifies as a person under ORS 183.310(7):

> " 'Person' means any individual, partnership, corporation, association, governmental subdivision or public or private organization of any character other than an *agency.*"

[4] PETA also claims that it was "adversely affected" by the order. However, its argument does not differ in substance from the one that it makes for standing as an "aggrieved person," and we need not address it separately.

PETA first contends that the interpretation of "aggrieved" applicable in land use proceedings should be applied under ORS 183.480(1). ORS 197.830 formerly provided that any person aggrieved by a land use decision could petition the Land Use Board of Appeals for review. PETA contends that, because the Supreme Court has ruled that provisions providing for appellate review for substantial evidence should be interpreted the same under the land use statutes in ORS chapter 197 as they are under the Administrative Procedures Act, *see former* ORS 197.835(8)(a)(C); *Younger v. City of Portland,* 305 Or 346, 752 P2d 262 (1988), "aggrieved" should be given the same interpretation under the APA as it is in land use cases:

> "A person whose interest in the decision has been recognized by the body making a quasijudicial decision and who has appeared and asserted a position on the merits as an interested person, rather than only as a source of information or expertise, can be 'aggrieved' by an adverse decision within the meaning of [*former* ORS 197.830]. As in *Marbet [v. Portland Gen. Elect.,* 277 Or 447, 561 P2d 154 (1977)]*, to be 'aggrieved' a person must be more than abstractly dissatisfied with the outcome after the fact. The decision must be contrary to the request or other position that the person espoused during the proceeding." *Benton County v. Friends of Benton County,* 294 Or 79, 89, 653 P2d 1249 (1982).

PETA argues that, under that language, it clearly has standing, because it participated, advocated its position and lost.

Even if PETA's letter or letters to the committee can be said to constitute "participation," we do not agree that that participation necessarily confers standing under ORS 183.480(1). An identical meaning for substantial evidence in the land use context as under the APA does not compel the conclusion that standing as an aggrieved person be the same in both schemes. Standing cannot be resolved by reference to general statements derived from one kind of proceeding and applied in a different statutory context and has to be determined by reference to the statute authorizing review and the statutory claims being asserted. *See Benton County v. Friends of Benton County, supra,* 294 Or at 82; *Marbet v. Portland Gen. Elect., supra,* 277 Or at 457; *see also NW Medical Lab. v. Good Samaritan Hospital,* 309 Or 262, 786 P2d 718 (1990).

The Supreme Court's analysis of standing under

ORS 183.480(1) in *Marbet* is instructive on how the determination is to be made here. The petitioner had been granted intervenor status in a proceeding before the Energy Facility Siting Council. On judicial review, the defendants challenged the petitioner's standing. The court upheld the petitioner's right to represent a "public interest," because substantive provisions of the siting statutes that allowed intervention, ORS 469.380, showed a legislative intent that decisions of the Council not be made by considering only private interests. The statutes also called for attention to the public interest by requiring consideration of consequences to population growth, environmental effects and possible dangers in the transportation of toxic materials. In that light, the Supreme Court stated that, under ORS 183.480(1),

> "[w]hatever may be the reach of 'person * * * aggrieved' in different settings, it surely includes one whom the agency itself, pursuant to a statutory directive, has recognized to present an interest that the legislature wished to have considered." *Marbet v. Portland Gen. Elect., supra.* 277 Or at 457.

In *Multnomah County v. Talbot,* 56 Or App 235, 641 P2d 617 (1982), *opinion adopted* 294 Or 478, 657 P2d 684 (1983), standing as an aggrieved person under ORS 183.480(1) was likewise grounded on statutes that showed a legislative recognition of a public interest that ought to be represented. There, a county tax assessor had standing to challenge a certification of real property as historic property, because the statutes establishing the procedure, ORS 358.475 *et seq,* required involvement by the assessor.

■■   PETA claims that it represents a comparable public interest that gives it standing, even if its claimed participation before the committee does not: assuring that animals are protected, because they cannot protect themselves. However, the existence of an interest of members of the public in an agency's work does not mean *ipso facto* that there is or must be a judicial route by which to attack judicially every agency decision perceived as being against that interest. The thrust of the analyses in *Marbet* and *Talbot* is that, when the claimed interest is public, whether that interest permits a judicial challenge under ORS 183.480(1) depends on the underlying substantive statute.

In its petition in circuit court,[5] PETA alleged

<hr/>

[5] These are the relevant sections of PETA's complaint:

"17.

"Petitioner was formed to represent the interests of society in protecting and promoting the well-being of animals. Applicable provisions of the Animal Welfare Act (7 U.S.C. Sec. 2143(b)(1)) impose upon IACUCs a duty to serve the interests of citizens, such as petitioner's members, in the protection of animals used in research by requiring that all IACUCs be composed of individuals who 'represent *society's concerns regarding the welfare of animal subjects*,' and by requiring that at least one IACUC member 'provide representation for general community interests in the proper care and treatment of animals.' Since, at the University of Oregon, the IACUC is also charged with ensuring that animal uses in research are strictly limited to those sanctioned by University rules, community interests represented on the University of Oregon's IACUC are extended to include the nature of the uses of animals in research, in addition to such animals' proper care and treatment.

"18.

"By authorizing animal research in the absence of duly made and recorded findings that such research was within the bounds established by University rules, defendant's September 26, 1988 order frustrated petitioner's recognized interest in helping to ensure that animals are not used in violation of public policies. Defendant's September 26, 1988 order further aggrieved petitioner's membership by directing their taxes towards the support of biomedical research of questionable benefit to themselves and others, while consequently channeling such taxes away from biomedical research more likely to yield palpable health benefits.

"19.

"Defendant's order of September 26, 1988 was outside the range of discretion delegated the IACUC by law, and was inconsistent with 1) the position of the University of Oregon officially stated in the University's Policy Statement on the Institutional Use of Animals in Research and Instruction and its implementing Code of Ethics and 2) the University of Oregon's position of abiding by the review and formal meeting requirements contained in provisions IV. C. 1. and 2. of the PHS Policy in matters involving the use of vertebrate animals in research.

"20.

"Defendant's order of September 26, 1988 was in violation of the majority voting requirements of ORS 174.130 and of the minute-keeping requirements of ORS 192.650. Defendant's post-September 26, 1988 resubmittal of the [professor's] proposals *to members of the IACUC without the convening of an IACUC session* violated the requirements of openness contained in ORS 192.620 and ORS 192.630, the requirements for the convening of the IACUC contained in provision IV. C. 2. of the PHS Policy, and the quorum requirements for all formal IACUC actions appearing at 7 U.S.C. Sec. 2143(b)(2). The resubmittal and resulting second vote on the proposals were, therefore, of no effect, and could not cure the statutory violations entailed in defendant's September 26, 1988 order.

"21.

"Defendant's September 26, 1988 order was not supported by substantial evidence in the record, the public or official portion of which consists of the minutes of the IACUC's September 26, 1988 meeting and correspondence between the IACUC and [the assistant professor] prior to September 26, 1988. When viewed as a whole, this record would not permit a reasonable person to find that all the conditions for IACUC approval of animal research established by the University of Oregon's Policy Statement on the Institutional Use of Animals in Research

violations of the Animal Welfare Act, *supra* n 1, and the Open Meetings Law. ORS 192.610 *et seq.* The Animal Welfare Act specifically provides for representation of the public interest through the very committee whose decision PETA disputes. 7 USC § 2143(b)(1) requires that all animal care and use committees "represent society's concerns regarding the welfare of animal subjects," and at least one member "is intended to provide representation for general community interests in the proper care and treatment of animals * * *." 7 USC § 2143(b)(1)(B)(iii).[6]

The Fourth Circuit Court of Appeals considered the issue of standing under the Animal Welfare Act and held that private individuals and organizations, including PETA, do not have standing to sue in federal court for alleged violations. The court noted that the purpose of the act is the humane care and treatment of animals in research facilities. It discussed the statutory provisions for the enforcement of that purpose[7] and concluded:

> "* * * Congress crafted a comprehensive plan for the regulation, inspection, and sanction of medical facilities that utilize animals in research. It is clear that the supervisory goals of the statute were to be realized through a regime [*sic*] of administrative enforcement, with the right of judicial review for an aggrieved facility. 7 USC § 2149(b). It is equally clear that these goals were not to be realized through a succession of private lawsuits." *Intern. Primate Prot. v. Inst. for Behav. Research,* 799 F2d 934, 940 (4th Cir 1986).

■ ■ We agree. Unlike the statutes governing siting of nuclear facilities, as in *Marbet v. Portland Gen. Elec., supra,* or statutes that could affect the equitable distribution of property taxes, as in *Multnomah County v. Talbot, supra,* the Animal Welfare Act recognizes only a limited, not a general right, to public participation, and that is to be achieved by the make-

---

and Instruction and Code of Ethics were met by the * * * proposals."

[6] The committee supplements enforcement of the act by the Secretary of Agriculture. Each research facility must include on the committee at least one veterinarian and one person not affiliated with the facility. 7 USC § 2143(b)(1).

[7] The statute directs the Secretary of Agriculture to promulgate standards, 7 USC § 2143, and gives him enforcement powers. 7 USC §§ 2146, 2149.

up of and charge to the committee. PETA has not shown that it has standing.[8]

■      PETA also alleged violations of the Open Meetings Law. ORS 192.680(2)[9] provides that "[a]ny person affected by a decision of a governing body may commence a suit in the circuit court" to require compliance with the law. ORS 192.610 to ORS 192.690. The remedial provisions of ORS 192.680 are exclusive. ORS 192.680(6); *Harris v. Nordquist,* 96 Or App 19, 21, 771 P2d 637 (1989). We need not determine whether PETA is a "person affected" by the committee's decision, *see Harris v. Nordquist, supra,* 96 Or App at 22, because it did not bring its challenge as an action seeking remedies under ORS 192.680. It sought to reverse the committee's action by bringing a petition for judicial review under the APA.

Affirmed.

---

[8] The general university policy statement and implementing code of ethics contain nothing to suggest that the general public may seek to enforce their provisions. We also reject PETA's assertions that it shares in the broad public interest in the proper conduct of official business evidenced by Oregon's "quorum statute," ORS 174.130, and that the rulemaking procedures of the Oregon APA create a right to judicial review under ORS 183.480(1).

[9] ORS 192.680 was amended and renumbered in 1989. No substantive changes affecting this case were enacted. We refer to the current provisions of the statute.