Argued and submitted January 23, reassigned August 14, the decision of the Court of
Appeals and the judgment of the circuit court affirmed September 19, 1991

## PEOPLE FOR THE ETHICAL
## TREATMENT OF ANIMALS,
*Petitioner on Review,*

*v.*

## INSTITUTIONAL ANIMAL CARE
## AND USE COMMITTEE OF
## THE UNIVERSITY OF OREGON
and The University of Oregon,
*Respondents on Review.*

## (CC 88C-11844; CA A60341; SC S37441)

817 P2d 1299

Allen L. Johnson, of Johnson & Kloos, Eugene, argued the cause for petitioner on review. With him on the petition was Mary C. Scurlock, Eugene.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondents on review. With him on the response were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Carson, Presiding Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

GILLETTE, J.

## GILLETTE, J.

The issue in this administrative law case is whether People for the Ethical Treatment of Animals (PETA) has standing, as an aggrieved person, to challenge an order of the University of Oregon's Institutional Animal Care and Use Committee (IACUC) approving, as consistent with federal guidelines, proposed research on the auditory system of barn owls. The circuit court granted IACUC's motion to dismiss PETA's petition on the ground that PETA lacked standing under the Oregon Administrative Procedures Act (APA). The Court of Appeals affirmed. *People for Ethical Treatment v. Inst. Animal Care,* 102 Or App 276, 794 P2d 1224 (1990). We also affirm.

PETA is a national non-profit animal protection organization with an Oregon membership of over 3,000. IACUC is a committee created by the University of Oregon pursuant to federal law.[1] Its purpose is to review all proposals for use of vertebrate animals for research at the university, in order to assure that the research animals, if used at all, will be properly treated according to federally-established guidelines. IACUC is governed by rules adopted by it and the university, as well as by rules imposed by applicable federal and state law.

On September 26, 1988, IACUC conducted a meeting to discuss, among other things, a professor's grant proposal to study the auditory system of barn owls. IACUC conducted all deliberations concerning the barn owl proposal in executive session, closed to any public participation. A vote approving the animal-protection aspects of the grant application subsequently was taken in open session. Members of PETA present at the later, public meeting were not allowed to participate in the discussion. After the meeting, PETA sent the IACUC chairman a letter objecting to the IACUC order approving the grant and asking that PETA's objections be made a part of the minutes, which was done.[2] Later, the barn

---

[1] The University of Oregon created IACUC pursuant to the Health Research Extension Act of 1985, 42 USC § 289(d); IACUC operates in accordance with applicable provisions of the Animal Welfare Act, 7 USC § 2131 *et seq.*

[2] The minutes that reflect IACUC's approval of the barn owl study proposal constitute IACUC's order. ORS 183.310(5)(b).

owl study proposal was resubmitted to IACUC for reconsideration and a second vote, all of which occurred without a public meeting. PETA sent a second letter to IACUC requesting information on, and objecting to, the second vote on the proposal. IACUC did not change its order.

PETA filed a petition for judicial review of an order in other than a contested case, ORS 183.484, in the Marion County Circuit Court, claiming that IACUC's order violated federal and Oregon law as well as university rules and, therefore, was invalid. On IACUC's motion, the circuit court dismissed PETA's petition on the ground that PETA lacked standing.[3]

PETA sought judicial review in the Court of Appeals, claiming that it had standing to seek judicial review of IACUC's order as an "aggrieved" person[4] under ORS 183.480(1), which provides, in part:

> "Any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order, whether such order is affirmative or negative in form."

---

[3] The paragraph of PETA's petition in the circuit court containing PETA's assertion that it had standing stated:

"By authorizing animal research in the absence of duly made and recorded findings that such research was within the bounds established by University rules, defendant's September 26, 1988 order frustrated petitioner's recognized interest in helping to ensure that animals are not used in violation of public policies. Defendant's September 26, 1988 order further aggrieved petitioner's membership by directing their taxes towards the support of biomedical research of questionable benefit to themselves and others, while consequently channeling such taxes away from biomedical research more likely to yield palpable health benefits."

[4] PETA is a person under ORS 183.310(7):

" 'Person' means any individual, partnership, corporation, association, governmental subdivision or public or private organization of any character other than an agency."

PETA also argued before the Court of Appeals that it was "adversely affected" by IACUC's order. The court did not address that contention, finding that it did not differ in substance from the one PETA made for standing as an "aggrieved person." *People for Ethical Treatment v. Inst. Animal Care,* 102 Or App 276, 278 n 4, 794 P2d 1224 (1990). We agree with this determination and likewise do not separately address whether PETA was "adversely affected," beyond noting that "adversely affected" normally requires some more palpable harm than the kind of mere dissatisfaction with the outcome that PETA evinces here.

The Court of Appeals affirmed, holding that, under *Marbet v. Portland Gen. Elect.,* 277 Or 447, 561 P2d 154 (1977), and *Multnomah County v. Talbot,* 56 Or App 235, 641 P2d 617 (1982), *opinion adopted* 294 Or 478, 657 P2d 684 (1983), PETA lacked the requisite interest in this case to be "aggrieved." "The thrust of the analyses in *Marbet* and *Talbot* is that, when the claimed interest is public, whether that interest permits a judicial challenge under ORS 183.480(1) depends on the underlying substantive statute." *People for Ethical Treatment v. Inst. Animal Care, supra,* 102 Or App at 280. The court concluded that the Animal Welfare Act, 7 USC 2131 *et seq.,* which PETA claimed had been violated by IACUC, did not provide standing for private individuals and organizations like PETA.[5] "The Animal Welfare Act specifically provides for representation of the public interest through the very committee whose decision PETA disputes." *Id.* at 282. The court also rejected PETA's contention that IACUC violated Oregon's Open Meeting Law, ORS 192.610 *et seq.,* because PETA "did not bring its challenge as an action seeking remedies under ORS 192.680." *Id.* at 283.

PETA petitioned this court for review, arguing that the Court of Appeals erred in its interpretation of *Marbet v. Portland Gen. Elect., supra,* and *Multnomah County v. Talbot, supra,* and that it has standing to challenge IACUC's decision. We hold that it does not and therefore affirm the Court of Appeals' decision, but on different grounds than those stated by the Court of Appeals.

 To seek judicial review of government action, a party must have standing. Standing is not a matter of common law, *Benton County v. Friends of Benton County,* 294 Or 79, 82, 653 P2d 1249 (1982); it is conferred by the Legislative Assembly. Therefore, and aside from certain constitutional considerations not presented by this case, a reviewing court's inquiry into the standing of an entity seeking judicial review is confined to an interpretation of legislative intent.

The concept of an "aggrieved" person in ORS 183.484 is not self-explanatory. To be aggrieved, for example,

[5] The Court of Appeals adopted the reasoning of *Intern. Primate Prot. v. Inst. for Behav. Research,* 799 F2d 934, 940 (4th Cir 1986) *cert den* 481 US 1004 (1987), in this regard.

must one have suffered harm to an interest of one's own, or is it enough that one has a general desire to see the law correctly followed? To understand the term, we therefore turn to legislative history. In 1971, the Legislative Assembly expanded standing under the APA to include "aggrieved" persons, Or Laws 1971, ch 734, § 8, primarily to reflect this court's holding in *Ore. Newspaper Pub. v. Peterson,* 244 Or 116, 415 P2d 21 (1966). *See Marbet v. Portland Gen. Elect., supra,* 277 Or at 457-58 n 5; Oregon State Bar, 1970 Annual Committee Reports, Administrative Law, at 25 (explaining that the proposed change in prerequisite for standing under the APA reflected "the rule of standing for * * * persons [other than parties] set forth by the Oregon Supreme Court in the *Ore. Newspaper Pub. v. Peterson,* 244 Or 116[, 415 P2d 21] (1966), that is that 'any person adversely affected or aggrieved' by an order, * * * is entitled to a judicial review.").[6] In *Ore. Newspaper Pub. v. Peterson, supra,* this court held that a newspaper association had standing under the APA to challenge a regulation of the Pharmacy Board prohibiting drug stores from advertising prescription drugs, even though the newspaper association was not itself bound by the rule. We explained that "[s]tanding grows out of the allegation of a substantial injury directly resulting from the challenged governmental action." *Id.* at 121. Because the rule "produced an immediate economic effect upon the [association] when it induced the drug stores to cancel their advertising contracts[,] * * * [the association had] an injury to a substantial interest." *Id.*

This court previously has explored the scope of the legislature's intent with respect to standing as an "aggrieved" person under the APA. In *Marbet v. Portland*

---

[6] The phrase "adversely affected or aggrieved" prompted little discussion in the 1971 legislature. The phrase was included in the first draft of House Bill 1213 and remained unchanged throughout the session. *Compare* Bill File, House Judiciary Committee (HB 1213), Dec 30, 1970 draft bill, *with* Or Laws 1971, ch 734, § 18. The 1970 Bar Committee Report, which identified the source of the phrase, was presented to the 1971 legislature. Minutes, House Judiciary Subcommittee I (HB 1213), Feb 23, 1971 at 1. In submitting a report to the legislature on the conforming amendments that the 1971 bill would require, the Bar Committee repeated that the phrase "adversely affected or aggrieved" "is intended to adopt the broad rule of 'standing' in *Oregon Newspaper Publishers Association v. Peterson,* 244 Or 166 (1966)." May 14, 1971, Report of the Committee on Administrative Law of the Oregon State Bar on Conforming Amendments to HB 1213, House Judiciary Committee (HB 1213), Exhibit File, at 10.

*Gen. Elect., supra,* Marbet sought to intervene to present his views in a proceeding before the Energy Facility Siting Council, which is responsible for determining the location of nuclear power facilities within the state. The council admitted Marbet as a party pursuant to ORS 469.380(2), which authorized the admission as a party of "any person * * * who appears to have an interest in the results of the hearing or who represents a public interest in such results." On judicial review, the investor-owned utility company whose license was at issue in the underlying proceeding challenged Marbet's standing. This court held that Marbet, as a party, had standing as an "aggrieved" person because of the legislature's explicit recognition of the public's interest in the council's decision. "Whatever may be the reach of 'person * * * aggrieved' in different settings, it surely includes one whom the agency itself, pursuant to a statutory directive, has recognized to present an interest that the legislature wished to have considered." *Id.* at 457.

In *Multnomah County v. Talbot, supra,* a county tax assessor sought to challenge the date on which the state preservation officer classified certain property as historic property, thus freezing its assessed value. This court adopted the Court of Appeals' opinion, which held that the tax assessor was an "aggrieved" person under ORS 183.480(1), because the tax assessor had a statutorily imposed involvement under the legislative scheme. The court determined that standing under the Oregon APA required "more than * * * [an] abstract interest * * * in the question presented. A basic element of the policy underlying the standing requirement * * * 'is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues * * *"' " in the proceeding. *Id.* at 242 (quoting *Flast v. Cohen,* 392 US 83, 99, 88 S Ct 1942, 20 L Ed 2d 947 (1968), which in turn was quoting *Baker v. Carr,* 369 US 186, 204, 82 S Ct 691, 7 L Ed 2d 663 (1962)).

■ ■ From the legislative history and from our prior interpretations of "aggrieved" person, we conclude that a person is "aggrieved" under ORS 183.480(1) if the person shows one or more of the following factors: (1) the person has suffered an injury to a substantial interest resulting directly

from the challenged governmental action, *Ore. Newspaper Pub., supra,* 244 Or at 121; (2) the person seeks to further an interest that the legislature expressly wished to have considered, *Marbet v. Portland Gen. Elect., supra,* 277 Or at 457; or (3) the person has such a personal stake in the outcome of the controversy as to assure concrete adverseness to the proceeding, *Multnomah County v. Talbot, supra,* 56 Or App at 242. The legislature has not granted standing under ORS 183.480(1) to those persons who merely are "dissatisfied with the agency's order," *Marbet v. Portland Gen. Elect., supra,* 277 Or at 457, or who have only an "abstract interest * * * in the question presented," *Multnomah County v. Talbot, supra,* 56 Or App at 242, or who are mere bystanders, *Gortmaker v. Seaton,* 252 Or 440, 444, 450 P2d 547 (1969) ("The advocacy of those who have something at stake in the outcome of * * * [an agency proceeding] is far more helpful to a court of law than are the academic speculations of bystanders.").

■ Turning to the present case, we hold that PETA is not an "aggrieved" person under ORS 183.480(1), because it has not shown, nor even claimed, that it fits within any of the criteria required by the legislature for standing. First, PETA has not claimed an injury to a substantial interest resulting directly from IACUC's order. Before the circuit court, PETA claimed IACUC's order would "frustrate [PETA's] recognized interest in helping to ensure that animals are not used in violation of public policies," and that its members would be aggrieved, because the order directed "their taxes towards the support of biomedical research of questionable benefit * * *." Both of PETA's asserted interests are concerns for political choices, interests that are not "substantial" for the purposes of standing for judicial review under the APA. What PETA argues, in essence, is for good government — its own particular view of good government. The Legislative Assembly is the proper forum for balancing political interests.

Second, PETA is not furthering an interest that the legislature expressly wished to have considered, as was done in *Marbet v. Portland Gen. Elect., supra.* PETA asserts that IACUC's order violated (1) Oregon's Open Meeting Law,

ORS 192.610 to 192.690, specifically ORS 192.620;[7] (2) ORS 174.130;[8] and (3) the University of Oregon's policy statements on animal research, and implementing code of ethics.[9]

None of those sources of authority helps PETA. First, the Court of Appeals correctly concluded that PETA did not obtain standing simply by alleging a violation of Oregon's Open Meeting Law. "We need not determine whether PETA is a 'person affected' by * * * [IACUC's] decision, * * * [ORS 192.680(2)], because it did not bring its challenge as an action seeking remedies under ORS 192.680 [the open meetings law]. It sought to reverse * * * [IACUC's] action by bringing a petition for judicial review under the APA." *People for Ethical Treatment v. Inst. Animal Care, supra,* 102 Or App at 283.

■ Next, PETA relies on ORS 174.130, which imposes a quorum requirement on IACUC's authority to approve grant applications. There is nothing in that statute or elsewhere in

---

[7] ORS 192.620 provides:

"The Oregon form of government requires an informed public aware of the deliberations and decisions of governing bodies and the information upon which such decisions were made. It is the intent of ORS 192.610 to 192.690[, Oregon's Open Meeting Law,] that decisions of governing bodies be arrived at openly."

[8] ORS 174.130 provides that "[a]ny authority conferred by law upon three or more persons may be exercised by a majority of them unless expressly otherwise provided by law."

[9] PETA contends that the university's "Policy Statement on Institutional Use of Animals in Research and Instruction," and the "Code of Ethics for Use of Animals in Research and Instruction," are binding on IACUC as rules. Without citation, PETA asserts that the applicable rules are:

(1) "The purpose of biomedical research and instruction involving animals shall be to improve human or animal health, and this requirement shall always be satisfied.

(2) The use of animals "should be [sic] only be considered when no other practical alternative exists."

(3) "When animals must be used, projects will be of sound design."

(4) "When animals must be used, projects will * * * offer every practical safeguard to the animals."

(5) "Experiments involving methods that may cause pain, discomfort, or distress must be of the shortest possible duration for valid results."

(6) "Methods which cause suffering or distress which cannot be justified by the expected quality of the data are not used."

(7) "The research is designed to utilize the best methods on the smallest number of animals of the appropriate species yielding valid results."

For the purposes of this discussion, we shall assume that PETA is correct and that these are rules. That does not, however, establish PETA's standing to *enforce* the rules.

chapter 174, however, that recognizes an interest of the general public in this quorum requirement, as was present in *Marbet v. Portland Gen. Elect., supra,* 277 Or at 453. The omission is significant. PETA's interest under ORS 174.130 is an interest in the proper conducting of agency meetings, indistinguishable from the interest of the public generally in obedience to procedural strictures. Similarly, the university regulations governing animal research do not suggest that the general public may seek to enforce their provisions. PETA has not asserted an interest different from that of the general public, *i.e.,* PETA is a bystander, and the interest of the general public is not enough to give PETA standing.

Finally, PETA has not claimed or shown such a personal stake in the outcome of the present controversy as to assure concrete adverseness to the proceeding. Although we have no doubt that PETA's zeal makes it sufficiently adversarial in this case, zeal does not provide the requisite "personal stake" in the outcome. As articulated in the opinion that this court adopted, *Multnomah County v. Talbot, supra,* 56 Or App at 242-43, a personal stake in the outcome means that the agency's decision will legally affect the petitioner in some way. In that case, by way of example, the court stated that it believed that the tax assessor had "a legally cognizable interest in assuring that the date as of which the assessed value of classified property is frozen [which was the decision disputed by the tax assessor] is correctly determined." *Id.* at 243. It was this "statutorily imposed involvement under the legislative scheme," *id.,* that gave the tax assessor standing. The adversarial nature of the tax assessor's interest, and the fact that "the assessor may be the most vigorous, and perhaps the only, challenger in this kind of case," *id.,* would not, standing alone, have been sufficient to give the assessor standing. Unlike the tax assessor, PETA does not have any legally cognizable interest in the present case. Whatever the outcome of IACUC's decision, PETA is not legally implicated in any way.

Despite the failure of PETA to meet any of the above factors, PETA argues that it nonetheless has standing, because implicit in *Marbet v. Portland Gen. Elect., supra,* is the view that "aggrieved" includes persons who actively advocate a position before an agency and lose. "It is the fact of

this participation that gives rise to the aggrievement," PETA asserts. This participation test is explicit in our land use decisions on standing for an "aggrieved" person. *Jefferson Landfill Comm. v. Marion Co.*, 297 Or 280, 284, 686 P2d 310 (1984); *Benton County v. Friends of Benton County, supra,* 294 Or at 86. However, *Benton County* was a land use case. *Marbet v. Portland Gen. Elect., supra,* does not imply standing for anyone who may participate in a hearing before an agency. PETA's attempt to incorporate the test for standing under land use statutes into the APA generally is not well taken. This court has stated that standing as an "aggrieved" person in land use proceedings is broader than that under the Oregon APA. *See Jefferson Landfill Comm. v. Marion Co., supra,* 297 Or at 284-86. Although the legislature may use the same words to describe the scope of standing under two different statutory schemes, the "criteria are by no means uniform or consistent." *Benton County v. Friends of Benton County, supra,* 294 Or at 82. Land use decisions, and the criteria for standing to seek review of these decisions, are *sui generis.* Trying to generalize rules of standing from them is inappropriate. *Id.* at 86-91.

We conclude that PETA has not shown any of the factors necessary to give it standing as an "aggrieved" person under the Oregon APA. We will not expand the APA's standing requirement to allow PETA to attempt to compel IACUC to obey its procedural requirements for approving the study of barn owls. Although IACUC is honor-bound, as are all agencies, to follow the rules applicable to it, the legislature has not provided, in the present case, a means by which a member of the general public (such as PETA) may enforce those rules. The circuit court's order correctly dismissed PETA's petition for judicial review.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.