Argued and submitted May 9, decisions of the Court of Appeals reversed and judgments of the circuit court affirmed July 18, 1996

In the Matter of the Air Contaminant
Discharge Permit Application
of Willamette Industries, Inc.
LOCAL NO. 290,
Plumbers and Pipefitters,
and on behalf of Certain Individual
Members Residing in Albany, Oregon, et al.,
and Royce Clouse,
*Respondents on Review,*

*v.*

OREGON DEPARTMENT OF
ENVIRONMENTAL QUALITY
and the Environmental Quality
Commission of Oregon,
*Petitioners on Review,*

*and*

WILLAMETTE INDUSTRIES, INC.,
*Petitioner on Review.*

In the Matter of the Air Contaminant
Discharge Permit Application
of Glenbrook Nickel Company and
In the Matter of the NPDES Permit
Application of Glenbrook Nickel Company.
LOCAL NO. 290,
Plumbers and Pipefitters,
and Certain Individual Members,
*Respondents on Review,*

*v.*

OREGON DEPARTMENT OF
ENVIRONMENTAL QUALITY,
*Petitioners on Review,*

*and*

THE ENVIRONMENTAL QUALITY
COMMISSION OF OREGON,
*Defendant,*

*and*

GLENBROOK NICKEL COMPANY,
*Petitioner on Review.*

(CC 9302-00754, 9204-02467; CA A81725, A82407;
SC S42666, S42667, S42668, S42677)
(Consolidated for Argument and Opinion)
919 P2d 1168

John T. Bagg, Assistant Attorney General, Salem, argued the cause for petitioners on review/respondents on review Oregon Department of Environmental Quality and the Environmental Quality Commission of Oregon. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Linda K. Williams, Portland, argued the cause and filed the brief for respondents on review Local 290, Plumbers and Pipefitters, et al.

William H. Walters, of Miller, Nash, Wiener, Hager & Carlsen, Portland, argued the cause for petitioner on review Willamette Industries, Inc.

Lori Irish Bauman, Portland, argued the cause for petitioner on review Glenbrook Nickel Company. With her on the brief was Frank Langfitt, III, Portland.

Karl G. Anuta, of Larry Sokol & Associates, P.C., Portland, filed the briefs in S42667 and S42668 for *amici curiae* Northwest Environmental Defense Center, Pacific Coast Federation of Fishermen Association, Northwest Environmental Advocates, Bicycle Transportation Alliance, WaterWatch of Oregon, The Sierra Club, Oregon Natural

Resources Council, Oregon Trout, Inc., Oregon Natural Desert Association, and American Civil Liberties Union Foundation of Oregon, Inc.

Thomas M. Christ, Portland, filed a brief in S42667 for *amicus curiae* ACLU Foundation of Oregon, Inc.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

GILLETTE, J.

---

** Unis, J., retired June 30, 1996, and did not participate in this decision.

**GILLETTE, J.**

These administrative law cases, consolidated in this court for purposes of argument and decision, involve challenges by Local 290, Plumbers and Pipefitters Union (the Union), to air and water discharge permits issued by the Department of Environmental Quality (DEQ) to Glenbrook Nickel Company and to an air discharge permit issued by DEQ to Willamette Industries, Inc. In each case, the Union asserted that the issuance of the permits violated various state and federal laws and alleged that it had representational standing to bring the challenges on behalf of its members. In the case of the Willamette Industries permit, a named Union member also was listed as a petitioner.[1]

The Union brought these challenges to the DEQ orders pursuant to ORS 183.484, a part of the Oregon Administrative Procedures Act (APA), which provides for judicial review of orders in "other than contested cases." Judicial review of such orders is conducted in the Marion County Circuit Court or in the circuit court for the county in which the petitioner has a principal business office. ORS 183.484(1). In these cases, the Union brought both proceedings in Multnomah County, where it has a principal office.

In each of the circuit court proceedings, which were heard before different judges, DEQ[2] moved for summary judgment on the ground that the Union had no standing to challenge the decisions to issue the permits. The Union responded that it had standing, both because it was a "person" "adversely affected or aggrieved," as that concept is embodied in ORS 183.484(3), and because it was entitled to act in a representational capacity on behalf of certain of its

---

[1] In case number 9204-02467, involving the Glenbrook Nickel Company permits, the Union alleged that it was acting on its own behalf and on behalf of "certain individual members." No "individual members" of the Union were identified.

In case number 9302-00754, involving the Willamette Industries permit, the Union alleged that it was acting "on behalf of certain individual members residing in Albany, Oregon, * * * and Royce Clouse."

[2] For the sake of simplicity, we refer to the moving party in each case as "DEQ." In fact, intervenor Environmental Quality Commission (EQC) and permit holders Willamette Industries and Glenbrook Nickel joined in the motions and have participated actively in these cases throughout their course.

members who themselves would have standing. After a hearing, each trial court granted summary judgment to DEQ and dismissed the case before it.

The Union appealed both trial court decisions to the Court of Appeals. *See* ORS 183.500 (providing for appeals from the circuit court to the Court of Appeals in such circumstances). That court reversed the judgments entered in the trial courts on the ground that, although the Union could not show that it was in its own right either adversely affected or aggrieved, there was an issue of material fact that had to be resolved in order to determine whether the Union had standing in a representational capacity. *Local No. 290 v. Dept. of Environ. Quality (A82407)*, 136 Or App 213, 901 P2d 921 (1995) (the Glenbrook permit cases); *Local No. 290 v. Dept. of Environ. Quality (A81725)*, 136 Or App 544, 901 P2d 919 (1995) (per curiam) (the Willamette Industries permit case).

We allowed the various petitions for review of DEQ (joined by the EQC), Glenbrook, and Willamette Industries in order to address the important issue of representational standing that is presented by the cases. For the reasons that follow, we now reverse the decisions of the Court of Appeals and reinstate the judgments of the circuit courts.

■    A petitioner for judicial review must establish that the petitioner has standing to invoke the judicial process. ORS 183.484(3) provides in part:

> "The petition shall state the nature of the petitioner's interest, *the facts showing how the petitioner is adversely affected or aggrieved* by the agency order and the ground or grounds upon which the petitioner contends the order should be reversed or remanded."

(Emphasis added.) DEQ and the permit holders assert that the Union cannot establish that it has standing under that statutory standard, because the Union itself is neither "adversely affected" nor "aggrieved," and because the statute does not permit a union or other organization that cannot meet one of those two criteria to seek judicial review in its own name on behalf of other persons who may themselves have standing.

The Court of Appeals disagreed. Relying on *Rendler v. Lincoln Co.*, 302 Or 177, 184-85, 728 P2d 21 (1986), the court held:

"We do not believe that the pertinent statutes preclude representational standing in APA proceedings, or that the representative must be directly adversely affected or aggrieved to have standing in that capacity. Under the Rendler formulation, representational standing depends in part on whether the members or other represented persons would have been able to 'pursue' the matter at issue independently of the representative. That would be a superfluous necessity if the representative was directly injured and, therefore, had standing independently of the members. If the represented persons are adversely affected or aggrieved, and if 'the organization is representing [their] position * * * on the disputed issues,' *id.* at 184, there is no logical reason why the organization itself must also meet the threshold of direct injury defined in the statute in order to have standing as a representative."

*Local No. 290*, 136 Or App at 218.

■　　The question presented is one of statutory interpretation. In interpreting a statute, this court seeks to determine and apply the intent of the legislature in enacting the statutory provision. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993).[3] Our first level of analysis involves examination of the text and context of the statutory wording. If the legislative intent is clear from that examination, our inquiry is at an end. *Id.* at 611.

■　　From the statutory text, it is clear that, in order to have standing, a "person" must either be "adversely affected" or "aggrieved." From context, ORS 183.310(7), we know that the concept of "person" in the APA includes associations and public and private organizations. The Union thus is a "person" for the purposes of ORS 183.484. We normally would be required next to determine the substantive content of the concepts of "adversely affected" and "aggrieved," but we are spared that task in this case by the fact that the Court of Appeals held that the Union is not adversely affected or

---

[3] The Court of Appeals did not mention, and did not utilize, the *PGE* methodology in reaching the conclusion that it reached in this case.

aggrieved, which holding the Union did not seek to have reviewed, as well as by the candid admission of counsel for the Union at oral argument to that same effect. We thus are left with the question whether, in spite of the fact that *it* is neither adversely affected nor aggrieved, the Union nonetheless can have standing in this case.

■ When it is ruling on a standing issue, a reviewing court must focus on the wording of the particular statute at issue, because standing is not a matter of common law but is, instead, conferred by the legislature. *See, e.g., Brian v. Oregon Government Ethics Commission,* 319 Or 151, 156, 874 P2d 1294 (1994) (so holding); *People for Ethical Treatment v. Inst. Animal Care,* 312 Or 95, 99, 817 P2d 1299 (1991) (same, citing *Benton County v. Friends of Benton County,* 294 Or 79, 82, 653 P2d 1249 (1982)); *Rendler,* 302 Or at 180. In particular, it is important that courts not interpret the contours of standing in a particular case by looking at other statutes that confer standing in different circumstances. *Benton County,* 294 Or at 82. For example, this court in *People for Ethical Treatment,* in defining the concept of "aggrievement" in the context of the APA, declined to draw parallels from earlier decisions in the land use context that had defined the same concept. 312 Or at 105.

The foregoing illustrates the fundamental error of the Court of Appeals, which drew on *Rendler,* a special proceeding involving the vacation or abandonment of a road, to decide that the APA embraces the concept of representational standing. *Rendler* did not deal with standing under the APA.[4] The decision was based on the discretionary standard in ORCP 33 C that permits a trial judge to allow intervention in a case by a "person who has an interest in the matter." So understood, it does not inform the present inquiry.

The Union argues that *Ore. Newspaper Pub. v. Peterson,* 244 Or 116, 415 P2d 21 (1966), supports its position; but that case, too, is inapposite. The case involved a challenge

---

[4] *Rendler* did *cite* one APA decision, *Marbet v. Portland Gen. Elect.,* 277 Or 447, 561 P2d 154 (1977), but only by way of illustrating the proposition that, once an individual or group has been granted standing as an interested party, limitations that otherwise arguably might exist with respect to standing become irrelevant. 302 Or at 180, 184 n 5.

brought under ORS 183.400, the declaratory judgment provision of the APA, by a number of newspapers and their trade association against an administrative regulation concerning the advertising of drug prices. The regulation had resulted in the cancellation of some advertising that otherwise would have been placed with some of the complaining newspapers. The court ruled that the fact that the loss of advertising revenue was a direct result of the regulation meant that the newspapers were "aggrieved" and, therefore, should have standing to maintain their challenge.[5] 244 Or at 120-21. By contrast, it is conceded in this case that the Union itself is not aggrieved.

■    When our inquiry is limited appropriately to the text and context of the APA, the answer to the question presented is not difficult. ORS 183.484 makes no mention of "representational" standing, and the statutory context does not support such an inference. Indeed, that statute requires that the person bringing the petition show how *that person* is adversely affected or aggrieved. We are admonished not to add to a statute words that the legislature has omitted. ORS 174.010; *see PGE*, 317 Or at 610-11 (referring to rules of statutory construction contained in ORS 174.010 as applying at first level of inquiry). In order to grant standing to the Union in these cases, we would have to violate that tenet of statutory construction, by adding a provision that a petition is sufficient if, although the *petitioner* is neither adversely affected nor aggrieved, the petitioner claims to be acting *on behalf* of another person who *does* meet one of those two criteria. It follows that, on the basis of the first-level inquiry under *PGE*, the legislative intent behind the standing provision in ORS 183.484 is clear.

■    On the basis of the foregoing statutory interpretation, the Union does not have standing to maintain these proceedings. The contrary decisions of the Court of Appeals were erroneous.

---

[5] The "aggrievement" concept recognized by the court in *Ore. Newspaper Pub.* later served as the guiding principle underlying the legislature's adoption, in 1971, of an expanded definition of standing under the APA to include those who were "aggrieved" by an action of an administrative agency. See discussion of the legislative history of the 1971 amendment to the APA in *People for Ethical Treatment v. Inst. Animal Care*, 312 Or 95, 100 & n 6, 817 P2d 1299 (1991).

■       Our holding with respect to representational stand-
ing leaves one remaining issue. As noted, the case involving
the challenge to the Willamette Industries permit included
an individual petitioner as well as the Union. The Court of
Appeals did not, in its *per curiam* disposition of that case,
purport to deal with the question of standing of that individ-
ual petitioner. In most circumstances, we therefore would
remand that case to the Court of Appeals to deal with the
remaining issue. However, we see no reason to prolong these
cases. We have examined the transcript of the deposition of
the individual petitioner. It reveals that the individual peti-
tioner has no direct, personal interest in the outcome of the
case. We conclude that, as a matter of law, inclusion of that
person does not create standing to maintain the proceeding,
because of his lack of a stake in the outcome.

The decisions of the Court of Appeals are reversed.
The judgments of the circuit court are affirmed.