Argued and submitted June 6, petition for judicial review dismissed
July 6, petition for review denied October 19, 2023 (371 Or 509)

IBEW LOCAL 89,
a labor organization, and
Oregon Legislative Assembly,
*Respondents,*

*v.*

Kimberly WALLAN
and Sarah Daley,
*Petitioners.*

Employment Relations Board
RC00121; A176604

533 P3d 1134

Petitioners bring this petition for judicial review of a final order of the Employment Relations Board certifying a collective bargaining unit for Legislative Assistants to the Oregon Legislative Assembly. Petitioners assert that the certification of the collective bargaining unit was a violation of the separation of powers and did not comply with the Public Employees Collective Bargaining Act. *Held*: The Court of Appeals dismissed the petition for review for lack of standing. The petitioners were a current legislator and one of her legislative assistants. The court concluded that those individuals did not have standing to assert institutional harms to the legislative assembly as a whole and did not otherwise allege sufficient facts to establish that they were entitled to petition as persons "adversely affected or aggrieved" under ORS 183.480(1).

Petition for judicial review dismissed.

Rebekah C. Millard argued the cause and filed the reply brief for petitioners. Also on the opening brief was James Abernathy.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General, filed the brief for respondent Oregon Legislative Assembly.

Caitlin J. Kauffman and Daniel Hutzenbiler argued the cause for respondent IBEW Local 89. Also on the brief was McKanna Bishop Joffe, LLP.

Jason M. Weyand, Danielle Holmes, and Tedesco Law Group filed the brief *amicus curiae* for American Federation

of State, County & Municipal Employees, Council 75, Local 189; American Federation of Teachers; Association of Engineering Employees; Oregon American Federation of Labor Congress; Oregon Education Association; Oregon School Employees Association; Oregon State Firefighters Council; Service Employees International Union, Local 503; and Teamsters Local 223.

Steve Elzinga and Sherman, Sherman, Johnnie & Hoyt LLP filed the brief *amicus curiae* for Shelly Boshart Davis, Jami Cate, Sarah El Ebiary, Lynn Findley, Jessica George, Christine Goodwin, Bill Hansell, Bryan Iverson, Vikki Breese Iverson, Tim Knopp, Bobby Levy, Rick Lewis, Dennis Linthicum, Diane Linthicum, Shelia Megson, Becky Mitts, Lily Morgan, Renee Perry, E. Werner Reshke, Anna Scharf, David Brock Smith, Duane Stark, Whitney Sullivan, Lenora Swift, Kim Thatcher, Chuck Thomsen, Suzanne Weber, and Boomer Wright.

Before Egan, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

KAMINS, J.

Petition for judicial review dismissed.

Lagesen, C. J., concurring.

**KAMINS, J.**

Petitioners seek judicial review of a final order of the Employment Relations Board (ERB) certifying IBEW Local 89 (the Union) as the exclusive representative of a collective bargaining unit comprised of legislative assistants (LAs) supporting elected officials in the Oregon Legislative Assembly (Legislative Assembly). Petitioners, State Representative Wallan, a current representative in the Oregon House, and Sarah Daley, one of her senior LAs, assert that the Union certification is invalid based on a violation of the constitutionally required separation of powers and a failure to comply with the Public Employees Collective Bargaining Act. We conclude that petitioners lack standing to bring this petition for review, and we therefore dismiss.

The relevant facts are largely procedural. In January 2021, the Union filed a representation petition with ERB seeking certification as the exclusive representative of a bargaining unit consisting of LAs of the Oregon Legislative Assembly.[1] The Legislative Assembly filed objections on multiple grounds. A hearing was conducted by an administrative law judge (ALJ), and the matter was transferred to ERB. In April 2021, ERB determined that the Legislative Assembly's objections were not valid, and ERB issued an Interim Order Directing an Election. Ballots were sent to eligible voters. Based on a majority of votes, ERB certified the Union as the exclusive representative of the bargaining unit and issued a final order to that effect on June 8, 2021.

On August 5, 2021, petitioners, who were not parties to the proceedings before ERB, filed a petition for review of that order, asserting that the certification should be invalidated. Petitioners brought the action under ORS 183.480(1) as "any person adversely affected or aggrieved by an order," and they each filed an affidavit in support of their petition for review, asserting the ways they are adversely affected

---

[1] The unit was comprised of the following classifications:

"Legislative Assistant I, Legislative Assistant II, Legislative Assistant III, and Legislative Assistant IV supporting elected officials in the Oregon Legislative Assembly, excluding supervisory, managerial, confidential, and caucus employees."

or aggrieved.[2] The affidavits assert that the certification of the bargaining unit created a conflict of interest for certain LAs, inserted an administrative agency into the office oversight of LAs, and interfered with essential functions of the Legislative Branch.

The Legislative Assembly filed a motion with this court to determine jurisdiction, asserting that petitioners do not have standing to bring this request for judicial review.[3] Following briefing by the parties, the Appellate Commissioner issued an order concluding that petitioners had shown that they were sufficiently adversely affected or aggrieved to establish standing. However, upon reconsideration, the court vacated the order and deferred the motion to the merits department.

Whether a party has standing to bring a claim is a question of law. "The source of law that determines that question is the statute that confers standing in the particular proceeding that the party has initiated, because standing is not a matter of common law but is, instead, conferred by the legislature." *Cascadia Wildlands v. Dept. of State Lands*, 293 Or App 127, 131, 427 P3d 1091 (2018), *aff'd*, 365 Or 750, 425 P3d 938 (2019) (internal quotation marks omitted). Petitioners brought this action for judicial review of a final order of an agency in a contested case. We therefore look to the statute governing judicial review of contested cases, ORS 183.480, to determine whether petitioners have standing.

ORS 183.480(1) allows "any person adversely affected or aggrieved by an order" to seek judicial review. That standard is met if the petitioner can demonstrate one or more of the following: (1) the petitioner has "suffered an injury to a substantial interest resulting directly from the challenged governmental action"; (2) the petitioner "seeks to further an interest that the legislature expressly wished to

---

[2] ORS 183.482(2) provides that a petitioner who seeks judicial review as a person adversely affected or aggrieved by an agency order "shall, by supporting affidavit, state the facts showing how the petitioner is adversely affected or aggrieved by the agency order."

[3] Though designated as the respondent before ERB, the Legislative Assembly did not file an appeal of ERB's decision, and indeed has joined the Union in opposing petitioners' request for judicial review.

have considered"; or (3) the petitioner has "such a personal stake in the outcome of the controversy as to assure concrete adverseness to the proceeding." *People for Ethical Treatment v. Inst. Animal Care*, 312 Or 95, 101-02, 817 P2d 1299 (1991), *abrogation on other grounds recognized by Couey v. Atkins*, 357 Or 460, 515, 355 P3d 866 (2015) (*PETA*) (internal citations omitted). Standing under ORS 183.480(1) is not available "to those persons who merely are dissatisfied with the agency's order, or who have only an abstract interest in the question presented, or who are mere bystanders." *Id.* at 102 (internal quotation marks and citations omitted).

Petitioners assert that the harms identified in their affidavits show they have a personal stake in the outcome consistent with the third factor in *PETA*, in that the creation of the bargaining unit directly impacts their ability to do their jobs and endangers the legislative function itself in a violation of the separation of powers.[4]

The third *PETA* factor requires a demonstration that the government action "'will *legally* affect the petitioner in some way.'" *McNichols v. Dept. of Fish and Wildlife*, 308 Or App 369, 373, 482 P3d 208 (2021) (quoting *PETA*, 312 Or at 104) (emphasis in *McNichols*). That legal effect must be particularized to the petitioner. *See Local No. 290 v. Dept. of Environ. Quality*, 323 Or 559, 567, 919 P2d 1168 (1996) (concluding ORS 183.484 regarding jurisdiction for review of orders other than contested cases does not allow for an organization to assert standing on behalf of a member because "that statute requires that the person bringing the petition show how *that person* is adversely affected or aggrieved," and concluding that a union that was admittedly not itself aggrieved by an order did not have standing to bring suit on behalf of some of its members who were (emphasis in original)). An issue that has yet to be addressed in the Oregon

---

[4] Petitioners also argue, for the first time in their reply brief, that ERB's decision injures a substantial interest they have in oversight and control of their LAs, consistent with the first factor in *PETA*, and that the legislature has expressed a desire to allow review of agency decisions for their constitutionality, consistent with the second factor in *PETA*. "[A]n issue raised for the first time in an appellant's reply brief generally will not be considered on appeal." *State v. Murga*, 291 Or App 462, 468, 422 P3d 417 (2018). However, as discussed below, we consider the entirety of both affidavits in assessing whether petitioners have established that they are adversely affected or aggrieved.

appellate courts, however, is whether an individual may establish standing under ORS 183.480(1) by asserting an institutional harm—that is, whether an institutional harm can qualify as a "personal stake" or as having a legal effect on the individual.

The federal courts and other state courts have issued persuasive case law discussing the difference between individual and institutional harms, generally concluding that an alleged injury to an institutional body does not give an individual standing to seek redress for that injury.

In *Raines v. Byrd*, 521 US 811, 117 S Ct 2312, 138 L Ed 2d 849 (1997), six individual members of Congress brought suit challenging an act of Congress that the plaintiffs alleged diluted their votes. In that case, the United States Supreme Court found that the plaintiffs had claimed "a type of institutional injury (the diminution of legislative power), which necessarily damages all Members of Congress and both Houses of Congress equally." *Raines*, 521 US at 821. The injury identified was "not claimed in any private capacity but solely because they are Members of Congress." *Id.* Thus, the Court concluded that the individual members did not have a sufficient personal stake in the dispute and had not alleged a sufficiently concrete injury to have established standing under Article III of the United States Constitution. *Id.* at 829-30. Similarly, in *Virginia House of Delegates v. Bethune-Hill*, 587 US ___, 139 S Ct 1945, 204 L Ed 2d 305 (2019), the Court held that the House of Delegates of the Virginia General Assembly lacked standing to appeal a court's invalidation of a redistricting plan that the state legislature had passed. The Court held that "a single House of a bicameral legislature lacks capacity to assert interests belonging to the legislature as a whole." *Virginia House of Delegates*, 587 US at ___, 139 S Ct at 1953-54.

In contrast, in another case the Court held that a state legislature *as a whole* had standing to challenge a state-wide initiative that reduced the legislature's power with respect to redistricting. *Arizona State Legislature v. Arizona Independent Redistricting Comm'n*, 576 US 787, 135 S Ct 2652, 192 L Ed 2d 704 (2015). In contrast to *Raines*, where the institutional injury at issue "scarcely zeroed in

on any individual Member" and was "widely dispersed," thereby resulting in none of the plaintiffs tenably claiming a personal stake in the suit, the Court held that "the Arizona Legislature *** is an institutional plaintiff asserting an institutional injury." *Id.* at 802.[5]

The United States Supreme Court cases analyzed standing under Article III of the federal constitution, where "a plaintiff must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct," by establishing that they have a "personal stake in the alleged dispute," that the "alleged injury suffered is particularized" to them, and that the alleged injury is "legally and judicially cognizable." *Raines*, 521 US at 818-19 (internal citations omitted; emphasis in original). Those requirements for Article III standing are consistent with the *PETA* factors for standing as an adversely affected or aggrieved person under ORS 183.480(1), which require a petitioner to demonstrate an injury to a substantial interest or a personal stake in

---

[5] Applying the standards set forth by the United States Supreme Court, other courts have limited individual standing to assert an institutional harm. *See Yaw v. Delaware River Basin Comm'n*, 49 F4th 302, 313-14 (3rd Cir 2022) (concluding that the allegations of usurpation of legislative powers and dilution of citizens' voting rights were "quintessentially institutional" and "classic examples of institutional injuries" that individual legislators did not have standing to assert because the legislators had not alleged any injury to themselves as individuals); *Collins v. Daniels*, 916 F3d 1302, 1313-14 (10th Cir 2019), *cert den*, ___ US ___, 140 S Ct 203 (2019) (concluding that state legislators' allegation that the state Supreme Court's action represented "an unconstitutional usurpation of [legislative] power" was an institutional injury that did not give the legislators standing, and the legislators' allegations regarding the separation of powers issues involved in the case weighed against finding standing); *Kerr v. Hickenlooper*, 824 F3d 1207, 1212, 1215 (10th Cir 2016) (holding that the legislators' claim that a provision of the Colorado Constitution "deprives them of their ability to perform the legislative core functions of taxation and appropriation" alleged only an institutional injury because "it is based on the loss of legislative power that necessarily impacts all members of the General Assembly," and the individual legislators therefore had not established standing); *Alaska Legislative Council v. Babbitt*, 181 F3d 1333, 1337-38 (DC Cir 1999) (holding that allegations by members of the state legislature that a certain federal law "interfered with their state duties" and "nullified their legislative prerogatives regarding fish and wildlife management" were insufficient to give the legislators standing because "[w]hile state legislation or regulations in conflict with [federal law] may be unenforceable *** that type of injury does not entitle individual legislators to seek a judicial remedy"); *Morrow v. Bentley*, 261 So 3d 278 (Ala 2017) (collecting similar cases from other jurisdictions and holding that allegations that executive actions violated state law and "operated to usurp the legislature's appropriation power" were allegations of institutional injury that a single legislator did not have standing to assert, absent authorization from the body as a whole).

the outcome of the controversy.[6] The reasoning set forth in *Raines* and its progeny map consistently with our own controlling precedent. A single legislator, asserting an injury to the legislative body as a whole, does not demonstrate an injury to their own substantial interests or a personal legal effect. An individual legislator cannot tenably claim a personal stake in a suit based on such an institutional injury.

In the matter at hand, petitioners claim that, even though many legislators and supervisory staff could be similarly impacted, the harms they have identified are individual to their own circumstances and are therefore not institutional injuries. The Union and the Legislative Assembly assert that the alleged injuries are purely institutional, as the impact is felt across the entire assembly equally.

We conclude that the bulk of petitioners' affidavits allege institutional harms.[7] Apart from the passing references to the impact on the supervision of LAs and potential conflicts of interest, discussed in more detail below, both affidavits focus primarily on the bargaining unit's interference "with the essential functions of the Legislative Branch" and the resulting violation of the separation of powers. Allegations that the certification of the bargaining unit vests authority with an executive agency rather than the legislative branch and interferes with the independence and functioning of the legislative branch are, by definition, allegations of harms to the institution, not the individuals. We further note that Representative Wallan has not been authorized by the Legislative Assembly to bring this action on behalf of the institution as a whole, and indeed, the Legislative Assembly is an adverse party in this petition

---

[6] In Oregon, "standing is not a generic concept but largely depends on the statute under which the plaintiff seeks relief." *MT & M Gaming, Inc. v. City of Portland*, 360 Or 544, 553, 383 P3d 800 (2016). We therefore do not rely on "general pronouncements about standing" drawn from different statutes, nor are we bound by "federal notions of standing that do not apply in Oregon." *Id.* at 554. However, the similarity between Article III standing and standing under ORS 183.480 renders the federal case law persuasive in our view.

[7] For the purposes of evaluating standing only, we accept petitioners' assertions in their affidavits. *Lee v. Secretary of State*, 324 Or App 275, 279, 526 P3d 775 (2023); *McNichols*, 308 Or App at 371; *Cascadia Wildlands*, 293 Or App at 132. However, we note that some allegations in the affidavits conflict with the unchallenged findings of fact set forth in ERB's order.

for judicial review. Petitioners do not have standing to bring this action based on the alleged institutional injuries.[8]

We thus turn to the few allegations in the affidavits that are not clearly institutional injuries. Specifically, Representative Wallan states in her affidavit:

"The institution of a labor union as exclusive representative for my Legislative Assistants adversely affects me because it creates a conflict of interest for my Legislative Assistants if the Union takes a position on a political issue or in a political race and my office holds a different position on that issue."

Ms. Daley states in her affidavit:

"Instituting a labor union as exclusive representative for the Legislative Assistants whom I oversee adversely affects me because doing so inserts an administrative agency between me and the Assistants I oversee."

The remainder of the affidavits contain only statements about the various parties' roles and no further assertions are made regarding the adverse effects of ERB's order.[9]

Neither of the quoted statements alleges an injury showing how the petitioners are "adversely affected or aggrieved." Representative Wallan does not identify any personal stake or how she will be legally affected by any perceived conflict of interest, consistent with the third factor set forth in *PETA*. Furthermore, the circumstances she identifies are speculative and do not indicate any injury that she has suffered to a substantial interest as a result of ERB's order certifying the bargaining unit. Even if we were to conclude that Representative Wallan has a substantial interest in her ability to trust and rely on her LAs, she has not alleged facts that demonstrate how that interest is injured by the

---

[8] We acknowledge that the Legislative Assembly as an entity would certainly have had standing to bring this petition for judicial review, as it was a party below. We also note that the institutional harms alleged largely parallel the arguments made by the Legislative Assembly before ERB in opposing certification of the bargaining unit.

[9] To the extent the briefs identify other concrete harms, such as the requirement to provide the Union access to staff during working hours or the inability to take into consideration an LA's union affiliation in the hiring and firing process, those injuries are not alleged in the affidavits and therefore do not provide a basis for standing under ORS 183.480(1) and ORS 183.482(2).

certification of the bargaining unit. *McNichols*, 308 Or App at 373 ("[W]e do not read *PETA* to allow for standing based on apprehension that an agency decision may injure a person's interests. The standard, as articulated by the Supreme Court, requires a showing that the person '*has suffered* an injury to a substantial interest.'" (Quoting *PETA*, 312 Or at 101; emphasis in *McNichols*.)). Similarly, Ms. Daley does not identify any injury to a substantial interest that resulted from the alleged insertion of an administrative agency into her supervisory relationships. Likewise, she has not alleged any legal effect the decision had on her. We have no doubt that petitioners' position and beliefs make them adversarial in this case; however, "zeal does not provide the requisite 'personal stake' in the outcome. *** [A] personal stake in the outcome means that the agency's decision will legally affect the petitioner in some way." *PETA*, 312 Or at 104.

We conclude that petitioners have not alleged sufficient facts to establish that they are entitled to petition as persons "adversely affected or aggrieved" under ORS 183.480(1). Because petitioners do not have standing, the petition for judicial review is dismissed, and we do not reach petitioners' arguments on the merits of ERB's order.

Petition for judicial review dismissed.

**LAGESEN, C. J.,** concurring.

I concur fully in the majority opinion's conclusion that petitioners have not demonstrated that they are "adversely affected or aggrieved by" the ERB order certifying a bargaining unit of legislative assistants. In particular, I agree with the majority opinion's conclusion that, at this point, petitioners have not demonstrated that the certification of a bargaining unit will have a nonspeculative effect on either one of them as individuals.

That ERB's decision has not caused injury to petitioners yet does not mean that it will not. Although the Legislative Assembly has appeared before us to argue only that petitioners lack standing, the Legislative Assembly appeared before ERB to make a broader range of arguments. Among other things, it argued vigorously (and not implausibly) that the certification of a collective bargaining

unit would violate separation-of-powers principles under the Oregon Constitution. At this point in time, it remains to be seen whether the collective bargaining process, which is new to the legislative branch and still in its very beginnings, will "interfere[] with the [legislature] in a manner which prevents or obstructs the performance of its irreducible constitutional task, [legislation]," such that ERB's decision to certify a bargaining unit will lead to a violation of separation of powers. *Circuit Court v. AFSCME*, 295 Or 542, 550, 669 P2d 314 (1983). Under Oregon law, "apprehension[s] of unconstitutional interference" are not sufficient to show a separation of powers violation. *Id*. at 551; *see also City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 295-96, 639 P2d 90 (1981) (Linde, J., concurring, explaining that it was premature to address whether ERB order requiring city to collectively bargain with its firefighters violated the home rule provisions of the Oregon Constitution).

If the apprehension of unconstitutional interference expressed by the Legislative Assembly before ERB, and reiterated by Representative Wallan before us, were to ripen into reality, that would change things. In that event, and in the event that the collective bargaining process, in fact, were to result in an identifiable and concrete impairment of Representative Wallan's ability to carry out her role as a legislator, one that could be redressed by a judicial decision, then, in my view, in an appropriate challenge, she would be in a position to raise the separation-of-powers concerns she has attempted to raise here. *See, e.g.*, *Collins v. Yellen*, ___ US ___, 141 S Ct 1761, 1780, 210 L Ed 2d 432 (2021) ("As we have explained on many prior occasions, the separation of powers is designed to preserve the liberty of all the people. So whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge." (Citations omitted.)).