On respondent's motion to dismiss filed May 6; petitioner's response to respondent's motion to dismiss filed July 16; respondent's reply to petitioner's response to respondent's motion to dismiss filed August 19; and petitioner's response to court's request for a response re mootness filed October 26; resubmitted en banc December 15, 2004, judicial review dismissed February 23, 2005

## RICHARD SHAWN WILCOX,
### *Petitioner,*

*v.*

## BOARD OF PAROLE
## AND POST-PRISON SUPERVISION,
### *Respondent.*

### A124435

107 P3d 637

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, Kathleen Cegla, Assistant Attorney General, for motion and Brendan C. Dunn, Assistant Attorney General, for reply.

Irene B. Taylor, Deputy Public Defender, Office of Public Defense Services, *contra*.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Schuman, and Ortega, Judges, and Deits, Judge pro tempore.

BREWER, C. J.

Armstrong, J., dissenting.

**BREWER, C. J.**

Petitioner seeks judicial review of an order of the Board of Parole and Post-Prison Supervision in which the board denied his request to reopen and reconsider its earlier order denying re-release on parole and setting a parole release date. The board has moved to dismiss the petition for judicial review on jurisdictional grounds, specifically, that its order denying petitioner's request to reopen and reconsider is not a final order and, alternatively, that petitioner is not adversely affected or aggrieved by the order, as provided in ORS 144.335(1).[1] We dismiss the petition for judicial review.

The following facts are undisputed. By order dated April 25, 2001, the board revoked petitioner's parole. On August 22, 2001, after a future disposition hearing, the board denied re-release and set a parole release date of October 29, 2004. As pertinent here, in September, October, and November 2001, pursuant to OAR 255-080-0001 to 255-080-0015,[2] petitioner sought administrative review of the board's August 22 order, arguing that his sentences had expired before revocation and that the board had abused its discretion by denying re-release based on a mere technical violation of his conditions of parole. The board administratively reviewed its order and, on December 11, 2001, denied

---

[1] ORS 144.335(1) provides:

"A person over whom the State Board of Parole and Post-Prison Supervision exercises its jurisdiction may seek judicial review of a final order of the board as provided in this section if:

"(a) The person is adversely affected or aggrieved by a final order of the board; and

"(b) The person has exhausted administrative review as provided by board rule."

[2] OAR 255-080-0001 provides that an order of the board is final for purposes of the time period for seeking judicial review when the inmate has exhausted his or her administrative review remedies, specifically, compliance with OAR 255-080-0005. OAR 255-080-0005 sets out procedures for requesting administrative review, including the requirement that the board receive the request within 45 days of the mailing date of the relevant board order. OAR 255-080-0010 sets out criteria for granting review. OAR 255-080-0011 sets out grounds for denying review, including failure to request review within 45 days of the mailing date of an order. OAR 255-080-0012 sets out the procedure for administrative review. OAR 255-080-0015 sets out the content of an "administrative review hearing packet." Relevant portions of the enumerated rules are set out in greater detail in the discussion.

relief. Petitioner then sought judicial review in this court, which ultimately affirmed the board's order without opinion. *Wilcox v. Board of Parole*, 192 Or App 673, 89 P3d 688, *rev den*, 337 Or 282 (2004).

Meanwhile, on July 10, 2003, while judicial review in that matter was still pending, the United States Court of Appeals for the Ninth Circuit decided *Himes v. Thompson*, 336 F3d 848 (9th Cir 2003). In that case, the petitioner was sentenced to prison for a crime committed in 1978. The board eventually released him on, then revoked him from, parole. In denying his re-release on parole, the board applied a rule adopted in 1994. The court determined that the board's application to him of that rule violated the Ex Post Facto Clause of the United States Constitution[3] because the rule "created a 'sufficient risk' of increasing the punishment attached to [the petitioner's] crimes." *Id.* at 854, 863.

On August 20, 2003, petitioner requested that the board reopen and reconsider his case under OAR 255-080-0010 to 255-080-0012, on the ground that the board had unconstitutionally applied to him the same rule that it had applied in *Himes*. On March 2, 2004, the board issued an order in which it concluded that petitioner had been requesting administrative review of its August 22, 2001, order and that the request had not been timely filed within 45 days as provided in OAR 255-080-0005. Alternatively, the board also determined that petitioner had already exhausted his administrative remedies with regard to its August 22, 2001, order by earlier requesting review of that order and receiving the board's December 11, 2001, response to his request. The board also concluded that, to the extent that petitioner was requesting that the board reopen his case, a rule that provided for requests for reopening had been repealed in 1988. Finally, the board determined that, in any event, the Ninth Circuit's decision in *Himes* did not assist petitioner because the reasoning and result in that case applied only to crimes committed between July 19, 1978 and January 31, 1979. The board denied review and denied petitioner's request to reopen and reconsider his case.

---

[3] Article I, section 10, of the United States Constitution provides, in part, that "[n]o State shall * * * pass any * * * ex post facto Law."

Petitioner then filed this petition for judicial review of the board's order. As noted, the board has moved to dismiss the petition. The board first argues that its March 2, 2004, order is not a "final order" within the meaning of ORS 144.335(1), as construed in *Perez v. Board of Parole*, 102 Or App 117, 792 P2d 1246, *rev den*, 310 Or 243 (1990). Alternatively, relying in part on *Frey v. Board of Parole*, 152 Or App 462, 950 P2d 418, *rev den*, 327 Or 173 (1998), the board argues that petitioner was not adversely affected or aggrieved by the board's refusal to reopen and reconsider his case because the order "merely reiterates or maintains the status quo." The board also argues that its criteria pertaining to reopening and reconsideration of a case—in particular, the criterion pertaining to information that was not available at the time of petitioner's earlier hearing, *see* OAR 255-080-0010(3)—do not assist petitioner because the *ex post facto* principles that the Ninth Circuit applied in *Himes*, as well as petitioner's arguments pertaining to the board's rules and the proper calculation of his sentence, were available to petitioner at that time.[4]

Petitioner responds, in part, that, in order to be reviewable under the current version of ORS 144.335(1), an order need only demonstrate that the board was "exercising its jurisdiction." Alternatively, as to whether the board's order was a final order, he argues that *Perez* pertained to an earlier version of ORS 144.335(1) that did not include any requirement that a petitioner exhaust administrative remedies and that applied only to orders granting, revoking, or discharging parole. Petitioner also argues that the board's order is reviewable as a final order because his request for reopening and reconsideration of his case constituted the exhaustion of administrative remedies as provided in ORS 144.335(1)(b). As to whether he was adversely affected or aggrieved by the order, petitioner again argues that amendments to ORS 144.335 abrogate the reasoning in the case relied on by the board in that regard. Petitioner further argues that, although OAR 255-080-0012(2) merely authorizes, and does not require, the board to reopen and reconsider

---

[4] The board does not argue in this court that its rules currently do not provide for inmates to request the reopening and reconsideration of board orders.

a case, the board's discretion is limited by OAR 255-080-0010, setting out criteria for granting review, including the circumstance that the board's action "is in violation of constitutional * * * provisions." OAR 255-080-0010(5). According to petitioner, the board's motion to dismiss his petition fails to demonstrate that he did not meet that criterion and therefore demonstrates that the board was required to reopen his case. Finally, relying on *Wolff v. McDonnell*, 418 US 539, 557, 94 S Ct 2963, 41 L Ed 2d 935 (1974), and *Jenkins v. Board of Parole*, 313 Or 234, 243, 833 P2d 1268 (1992), petitioner argues that, by promulgating OAR 255-080-0010, the board created an opportunity to obtain board review of orders that now constitutes a substantial right of persons subject to board jurisdiction, the abrogation of which violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[5]

The board replies that the reasoning in *Perez* as to what constitutes a "final order" and the reasoning in *Frey* as to the circumstances under which a person is "adversely affected or aggrieved" by such an order for the purposes of ORS 144.335(1) are not dependent on any particular version of that statute. Rather, the dispositive consideration in those cases, as in this case, is the "fundamental nature" of the order at issue. The board also contends that, even assuming that petitioner's request for reopening his case met the criterion in OAR 255-080-0010(5) for seeking administrative review of a board order (which the board disputes) and thus constituted the exhaustion of administrative remedies, the decision whether to grant reconsideration remains discretionary. Finally, the board contends that, consistently with *Shelby v. Board of Parole*, 140 Or App 102, 112-13, 915 P2d 414, *rev den*, 324 Or 18 (1996), the Due Process Clause does not entitle petitioner to judicial review of board orders. The board therefore again urges us to dismiss the petition for judicial review.

As pertinent here, a petitioner for judicial review of agency action must establish that the petitioner has standing, under the relevant statute, to invoke the judicial process.

---

[5] The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]"

*Local No. 290 v. Dept. of Environ. Quality*, 323 Or 559, 564, 919 P2d 1168 (1996); *see also Benton County v. Friends of Benton County*, 294 Or 79, 82, 653 P2d 1249 (1982) (standing to seek judicial review of government action is not a generic concept but must be determined under the particular statute at issue). By its terms, ORS 144.335(1) (quoted at 197 Or App 625 n 1), requires a person over whom the board has exercised its jurisdiction[6] to demonstrate that the resulting order was a "final order" by which he or she was "adversely affected or aggrieved." As discussed below, we conclude that we need not determine whether the board's March 2, 2004, order was a final order because, even assuming that it was, petitioner was not adversely affected or aggrieved by it within the meaning of ORS 144.335(1).

In determining the meaning of the phrase "adversely affected or aggrieved" in ORS 144.335(1), we apply the interpretive principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), beginning with the text of the statute in context. Neither ORS 144.335(1) nor any other provision of ORS chapter 144 defines or otherwise indicates what is meant by the relevant phrase. The plain meanings of the verb "affect" include "to act upon" and "to produce * * * [an] alteration in." *Webster's Third New Int'l Dictionary* 35 (unabridged ed 2002). The adverb "adversely" means, in part, "unfavorably, disadvantageously." *Id.* at 31. In addition, the adjective "aggrieved" means, in part, "having a grievance, *specif*: suffering from an infringement or denial of legal rights." *Id.* at 41. *See also Black's Law Dictionary* 1154 (8th ed 2004) (defining an "aggrieved party" as one "whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment").

The quoted definitions of "adversely" and "affect" suggest that a person is "adversely affected" by a final order of the board when the order produces some unfavorable or disadvantageous effect on the person or detrimentally alters some previously existing condition or status of the person. The quoted definition of "aggrieved" suggests that a person is

---

[6] The board does not dispute that it exercised its jurisdiction over petitioner.

"aggrieved" by an order of the board when the order infringes on or denies a legal right of the person.

■        Applying those understandings here, we conclude that a person is not adversely affected or aggrieved for the purpose of ORS 144.335(1) by an order of the board in which it denies a request to reopen and reconsider an earlier final order that was itself subject to administrative and judicial review on the ground that the earlier order was erroneous when issued. As relevant to the plain meaning of the phrase "adversely affected," the board's order denying reconsideration is not the source of any unfavorable or disadvantageous effect on the person and does not itself detrimentally alter the person's condition or status. And, as relevant to the plain meaning of the term "aggrieved," assuming that the order is consistent with applicable standards and criteria—whether procedural or substantive—the order does not itself infringe on or deny a legal right of the person to whom it is addressed. Rather, the substance of any aggrievement suffered by the person was caused by the preceding board order that, in the current order, the board merely refuses to reconsider.

Stating the latter point in another way, we understand the "aggrievement" criterion to mean, in part, that the detrimental or disadvantageous effect on the person, if any, must be the direct result of the board's current order. *Cf. People for Ethical Treatment v. Inst. Animal Care*, 312 Or 95, 99-102, 817 P2d 1299 (1991) (consistently with the legislative history and the court's prior interpretations of the provision of the Administrative Procedures Act providing for judicial review of agency action, a person or entity is "aggrieved" within the meaning of that statute if, among other possible circumstances, the person or entity "has suffered an injury to a substantial interest resulting *directly* from the challenged governmental action" (emphasis added; citation omitted)). *See also Teel Irrigation District v. Water Resources Dept.*, 323 Or 663, 678, 919 P2d 1172 (1996) (administrative agency's letter that "merely reiterated" the agency's earlier decision was not subject to judicial review under ORS 183.480(3), providing that any person "adversely affected or aggrieved" by an agency final order is entitled to such review).

Our interpretation of ORS 144.335(1) is consistent with *Frey*. In that case, the board established the length of the petitioner's post-prison supervision term in a November 1994 order.[7] The petitioner did not seek review of that order. In December 1994, the board issued another order in which it "continued" the PPS term previously imposed. This court concluded that it lacked jurisdiction to consider the petitioner's challenge to that portion of the December 1994 order, reasoning that, "[b]ecause the order on review did not change the [post-prison supervision term], petitioner was not aggrieved or adversely affected by that provision of it." 152 Or App at 462-64.[8]

Nor is it significant that, at the time we decided *Frey*, the version of ORS 144.335(1) that was in effect differed in a respect other than the use of the term "adversely affected or aggrieved," because that difference has no bearing on the proper meaning of the latter term.[9] It also lacks significance that, as a procedural matter, *Frey* did not involve the denial of a request to reopen and reconsider a matter. Rather, whether a person is adversely affected or aggrieved within the meaning of ORS 144.335(1) by an order of the board is a function of the nature and effect of the action taken by the board in that order. Again, the board's March 4, 2004, order denying petitioner's request to reopen and reconsider its earlier order is not subject to judicial review as provided in ORS 144.335(1) because petitioner was not "adversely affected or aggrieved" by the order within the meaning of that statute.

---

[7] The petitioner was subject to ORS 144.103, providing that the term of post-prison supervision of a person convicted of any of the specified sex offenses shall equal the difference between the person's incarceration term and the maximum statutory indeterminate sentence for that offense.

[8] In *Willaby v. Board of Parole*, 103 Or App 83, 88, 797 P2d 1050, *rev den*, 310 Or 547 (1990), we dismissed review of a petition for judicial review of a board order on the ground that the order did not change the actual duration of the petitioner's confinement, as established in a previous order. Interestingly, we concluded that that lack of effect precluded judicial review on the ground that the later order was not a "final order" within the meaning of ORS 144.335(1).

[9] The version of ORS 144.335(1) that was in effect in 1998, when we decided *Frey*, pertained to orders of the board relating to the granting, revoking, or discharging of parole, the revoking of post-prison supervision, and the imposition of conditions of parole or post-prison supervision. As pertinent here, the statute was amended to its present form in 2001. Or Laws 2001, ch 661, § 1.

We close our discussion of the issue with two clarifying points. First, there is a body of case law decided by the Supreme Court and this court that addresses the standing component of the constitutional requirement that courts adjudicate only justiciable controversies. *See, e.g., Utsey v. Coos County*, 176 Or App 524, 529-47, 32 P3d 933 (2001), *rev dismissed*, 335 Or 217 (2003). Under that case law, a controversy is justiciable only if a judgment in the action will have a "practical effect" on the claimant. *Brumnett v. PSRB*, 315 Or 402, 848 P2d 1194 (1993). The issue before us is not one of constitutional justiciability but, rather, statutory standing. Therefore, we do not plumb the reaches of the practical effects concept here. Instead, we employ statutory construction principles.

■     Second, in doing so, we are mindful that the legislature in other contexts has used the terms "aggrieved or adversely affected" to limit standing to seek judicial review of agency decisions. *See, e.g.*, ORS 183.480. However, we consider cases construing the term in different statutory contexts with a degree of caution. The Supreme Court has stated:

> "When it is ruling on a standing issue, a reviewing court must focus on the wording of the particular statute at issue, because standing is not a matter of common law but is, instead, conferred by the legislature. *See, e.g., Brian v. Oregon Government Ethics Commission*, 319 Or 151, 156, 874 P2d 1294 (1994) (so holding); *People for Ethical Treatment*[, 312 Or at 99] (same, citing *Benton County*[, 294 Or at 82]; *Rendler* [*v. Lincoln Co.*, 302 Or 177, 180, 728 P2d 21 (1986)]. In particular, it is important that courts not interpret the contours of standing in a particular case by looking at other statutes that confer standing in different circumstances. *Benton County*, 294 Or at 82. For example, this court in *People for Ethical Treatment*, in defining the concept of 'aggrievement' in the context of the APA, declined to draw parallels from earlier decisions in the land use context that had defined the same concept. 312 Or at 105."

*Local No. 290*, 323 Or at 566. In *People for Ethical Treatment*, the court interpreted the APA standing provision, ORS 183.480. It stated:

"From the legislative history and from our prior interpretations of 'aggrieved' person, we conclude that a person is 'aggrieved' under ORS 183.480(1) if the person shows one or more of the following factors: (1) the person has suffered an injury to a substantial interest resulting directly from the challenged governmental action, *Ore. Newspaper Pub.* [*v. Peterson*, 244 Or 116, 121, 415 P2d 21 (1966)]; (2) the person seeks to further an interest that the legislature expressly wished to have considered, *Marbet v. Portland Gen. Elect.* [, 277 Or 447, 457, 561 P2d 154 (1977)]; or (3) the person has such a personal stake in the outcome of the controversy as to assure concrete adverseness to the proceeding, *Multnomah County v. Talbot* [, 56 Or App 235, 242, 641 P2d 617 (1982), *aff'd*, 294 Or 478 (1983)]. The legislature has not granted standing under ORS 183.480(1) to those persons who merely are 'dissatisfied with the agency's order,' *Marbet*, [277 Or at 457], or who have only an 'abstract interest * * * in the question presented,' *Multnomah County*, [56 Or App at 242], or who are mere bystanders, *Gortmaker v. Seaton*, 252 Or 440, 444, 450 P2d 547 (1969) ('The advocacy of those who have something at stake in the outcome of * * * [an agency proceeding] is far more helpful to a court of law than are the academic speculations of bystanders.')."

312 Or at 101-02 (final brackets in *People for Ethical Treatment*).

With that caveat in mind, even if the forms of aggrievement cognizable under ORS 183.480 apply under ORS 144.335(1)(a), we conclude that petitioner has not satisfied them in this case. First, as discussed, petitioner has not shown that he has suffered an injury to a substantial interest *resulting directly from* the board's denial of reconsideration.

Second, petitioner has not identified any statutory indication that the interest he seeks to further is one that the legislature expressly wished to have considered. As noted, the legislature has not even provided for the type of reconsideration the denial of which petitioner seeks to have judicially reviewed; rather, such reconsideration is purely a creature of board rule.

Finally, petitioner does not fit the third category of aggrievement described in *People for Ethical Treatment*. That category, where the petitioner has "such a personal

stake in the outcome of the controversy as to assure concrete adverseness [in] the proceeding," 312 Or at 102, derives from this court's decision in *Multnomah County*, 56 Or App 235, which the Supreme Court adopted in *Multnomah County v. Talbot*, 294 Or 478, 657 P2d 684 (1983). In that case, a county tax assessor sought to challenge the date on which the state preservation officer certified certain property as historic property. This court held that the assessor was an "aggrieved" person under ORS 183.480(1) because the assessor had a statutorily imposed involvement under the legislative scheme. The court determined that standing under the Oregon APA required "more than * * * [an] abstract interest * * * in the question presented." *Talbot*, 56 Or App at 241-43. The category of aggrievement described in *Talbot* has never been applied to a person who was a party before the agency when it took the challenged action; rather, it logically applies only to persons who wish to challenge an agency action without the benefit of having had party status before the agency. In such circumstances, courts are properly concerned with a demonstration that true adverseness of interest exists before engaging in the task of judicial review.

None of those categories is applicable to the type of reconsideration that the board declined to undertake in this case. The board has authority to adopt rules establishing ranges of duration of imprisonment to be served for felony offenses before release on parole. ORS 144.780. Moreover, under specified circumstances, the board has authority either to accelerate or postpone release dates established in its previous orders. *See, e.g.*, ORS 144.122; ORS 144.125; ORS 144.126. Consistently with those responsibilities, the board has adopted a rule, OAR 255-010-0012(2), authorizing it to "open a case" for the reconsideration of findings.[10] Such administrative review is of a piece with a statutory scheme under which changes in an inmate's circumstances or conduct may warrant the prospective modification of a previous parole release decision. When the board opens a case for the purpose of determining whether its previous order should continue to have prospective effect or, instead, should be

---

[10] The board has not asserted that it denied reconsideration on the ground that OAR 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(2) is inapplicable in this case because petitioner did not ask the board to reconsider a "finding."

modified for prospective purposes; the board performs a function that is qualitatively different from the one it performs when it declines to take any new action on a previous decision that is challenged on the ground that the previous decision was wrong when issued. In the former case, an unsuccessful petitioner may be aggrieved by an adverse board decision because it directly inflicts an injury to the petitioner's substantial interest in the prospective modification of a previous order based on changed circumstances. In the latter case, however, the board's decision on reconsideration has no effect on any previously existing condition or status of the inmate.

The foregoing discussion answers each of the dissent's theses but, to be clear, we summarize those arguments and restate our responses here. First, the dissent asserts that our construction of "adversely affected or aggrieved" in ORS 144.335(1) bodes ominously for its meaning in other statutes. 197 Or App at 641-42 (Armstrong, J., dissenting). Not so. Our construction is context specific and follows the Supreme Court's directive in that regard. *See Local No. 290,* 323 Or at 566.

Second, the dissent criticizes the board for stating in its order denying reconsideration that *Himes* does not apply to petitioner's circumstances. 197 Or App at 643 (Armstrong, J., dissenting). Whether the board was correct in making that statement has no impact on the issue before us. The point is that the board was not even required to given an opinion on the issue, and the fact that it did so, albeit gratuitously, does not mean that petitioner was adversely affected or aggrieved by the order denying reconsideration.

Third, the dissent seems to agree that we have examined the proper sources in determining the meaning of the disputed statutory term. For example, the dissent approves the dictionary references that we have consulted. 197 Or App at 643-44 (Armstrong, J., dissenting). It also endorses the factor for aggrievement under ORS 183.480 that the Supreme Court approved in *People for Ethical Treatment* that the person must have "suffered an injury * * * resulting directly from the challenged governmental action." 197 Or App at 645 (Armstrong, J., dissenting). However, the dissent incorrectly applies those meanings to the

circumstances before us. According to the dissent, the order denying reconsideration adversely affected or aggrieved petitioner because it "altered his status from a prisoner with a colorable argument that his continued incarceration was unlawful to that of a prisoner without such an argument." 197 Or App at 644 (Armstrong, J., dissenting). That assertion exposes the heart of our disagreement. If, when the board denied reconsideration, petitioner had a colorable argument that his continued incarceration was unlawful under *ex post facto* principles, he had the same argument when the board issued its August 22, 2001, order. In other words, if petitioner's *ex post facto* argument is right, the previous order was wrong when issued. Thus, the order denying reconsideration did not alter or directly cause petitioner's status in that regard; it merely continued that status.

Fourth, the dissent's effort to distinguish *Frey* is unavailing. 197 Or App at 644 (Armstrong, J., dissenting). In *Frey*, we held that the petitioner was not adversely affected or aggrieved by an order that did not change the petitioner's circumstances, in that case his post-prison supervision term. Likewise, the board's rejection on reconsideration here of a "new argument" about why a previous re-release decision was wrong did not change petitioner's circumstances so as to adversely affect or aggrieve him. As the dissent may recognize, 197 Or App at 644 n 3 (Armstrong, J., dissenting), if its reasoning is correct, *Frey* was wrongly decided.

To be logically consistent, the dissent must believe that, if we affirm the board's order denying reconsideration, petitioner could again ask the board to reconsider its August 22, 2001, order based on yet another "new argument" about why that order was wrong when issued and, when the board denied reconsideration a second time, be adversely affected or aggrieved for purposes of judicial review. We conclude that the legislature did not intend to devise such a system.

Finally, as noted, petitioner relies on *Wolff* in arguing that, by establishing substantive criteria for administrative review of board orders in OAR 255-080-0010, the board has created a right under the Due Process Clause to administrative review of its orders under OAR 255-080-0012(2), as

well as to judicial review of the board's denial of that review.[11] For the following reasons, we disagree.

In *Wolff*, the State of Nebraska had by statute created a right to "good time" reductions of prison sentences. The United States Supreme Court explained that prison inmates therefore had a liberty interest in those reductions that was protected by the Due Process Clause, with the result that, when the state sought to deprive inmates of those reductions, the inmates were entitled to appropriate procedures "to insure that the state-created right is not arbitrarily abrogated." 418 US at 557. Similarly, in *Greenholtz v. Nebraska Penal Inmates*, 442 US 1, 7, 11-12, 99 S Ct 2100, 60 L Ed 2d 668 (1979), the Court held that a state statute that required a parole board to release an inmate on parole under specified circumstances created a liberty interest protected by due process guarantees. *See also Hewitt v. Helms*, 459 US 460, 472, 103 S Ct 864, 74 L Ed 2d 675 (1983) (prison regulations containing mandatory directives regarding predicates to disciplinary action by prison administrators created liberty interests in freedom from such action that were subject to Due Process Clause protections); *Hamel v. Johnson*, 173 Or App 448, 454, 454 n 2, 25 P3d 314 (2001) (a statutory entitlement to parole may, under some circumstances, create a liberty interest cognizable under the Due Process Clause; citing *Greenholtz*).

In *Sandin v. Conner*, 515 US 472, 115 S Ct 2293, 132 L Ed 2d 418 (1995), however, the Court reconsidered whether, in the prison context, a liberty interest protected by the Due Process Clause properly should be viewed as arising from the language of a particular statute or regulation or, rather, from the nature of the interest itself. *Id.* at 481. The Court concluded that the inquiry properly goes to the latter and that an inmate is entitled to the procedural protections set forth in *Wolff* only when the deprivation of an interest is of a type that inherently implicates the Due Process Clause.

---

[11] The board apparently understands petitioner's constitutional argument to relate solely to judicial review of the board's denial of his request to reopen. Although it is not entirely clear, we treat petitioner's argument as pertaining to both administrative and judicial review.

*Id.* at 483-84.[12] Thus, consistently with *Sandin*, even mandatory language in a state regulation does not necessarily create a liberty interest protected by the Due Process Clause.

■ Here, even assuming that OAR 255-080-0010—which, by its terms, applies to administrative review, *see also* OAR 255-080-0005, OAR 255-080-0011, and OAR 255-080-0012(1)—also establishes criteria for reopening and reconsidering cases under OAR 255-080-0012(2), nevertheless, the latter provision does not *require* that the board reopen and reconsider a case. Rather, it provides that the board "may" open a case for reconsideration.[13] Accordingly, it falls significantly short of the type of governmental directive that might, under appropriate circumstances, give rise to a protected liberty interest.

Nor do we understand deprivation of the interest at stake here—petitioner's interest in obtaining the reopening and reconsideration of the board's earlier action and his interest in obtaining judicial review of the board's denial of such reopening and reconsideration—inherently to implicate the protections of the Due Process Clause. We determined in *Shelby* that a petitioner was not entitled under the Due Process Clause to direct judicial review of the board's action in deferring his parole because the procedures that the board had already afforded the petitioner in that case—notice and an opportunity to be heard—were adequate to protect his liberty interest in parole. *Shelby*, 140 Or App at 113. By contrast, in *Jenkins*, the Supreme Court determined that the board's failure adequately to notify inmates of their right to judicial review impermissibly affected their "substantial right" to such review. 313 Or at 242-43. This case is like

---

[12] The *Sandin* Court recognized that the state could create liberty interests through its own regulations but explained that such interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force"—such as transfer to a mental hospital or the involuntary administration of psychotropic drugs—"nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 US at 484.

[13] As noted above, more precisely, OAR 255-080-0012(2) provides that the board "may open a case for *reconsideration of a finding* * * * and without opening all findings for review and appeal." (Emphasis added.) Again, the board makes no argument regarding the apparent limitation in that language, and we express no opinion regarding it.

*Shelby*: The board previously afforded petitioner administrative review as provided in OAR 255-080-0012(1), that is, upon his earlier, and timely, request under that provision. The Due Process Clause requires neither *further* administrative review—specifically, reopening and reconsideration of his case at some later time under OAR 255-080-0012(2)—nor judicial review by this court of the board's order denying such further administrative review. *Cf. Bartz v. State of Oregon*, 314 Or 353, 368, 839 P2d 217 (1992) ("Due process—that is, the use of procedures that are fundamentally fair and essential for preventing miscarriages of justice—does not preclude a state from attaching a reasonable time limitation to the assertion of constitutional claims.").[14]

We emphasize that the issue here is not the availability of other forums, if any, in which to raise a collateral challenge to a board action that is based on a later-decided judicial interpretation of applicable constitutional principles, including an interpretation that, if earlier announced, might have required a different outcome in the challenged action. We express no opinion on that issue. Rather, the only question before us is whether petitioner is entitled to judicial review of the board's order denying reconsideration of its previous order denying re-release.

Because petitioner was not adversely affected or aggrieved within the meaning of ORS 144.335(1) by the order denying reconsideration, and because due process principles do not require either further administrative review of the

---

[14] Relying on *Jenkins*, the dissent reasons in part that the board's order denying reconsideration was itself subject to the exhaustion requirement in ORS 144.335(1) and that the board therefore erred in failing to inform petitioner of that fact and in instead informing him that he was entitled to judicial review of that order. 197 Or App at 646-47 (Armstrong, J., dissenting). However, under the applicable rules as discussed above, an inmate's request for reopening and reconsideration of a matter is properly viewed as itself constituting a stage, albeit an optional one, of the otherwise required exhaustion of administrative remedies as to that matter. In addition, although we have decided that petitioner is not entitled to judicial review of the board's order denying reconsideration, the aspect of the board's order informing him to the contrary does not require reversal and remand to the board. *See 1000 Friends of Oregon v. LCDC (Clatsop Co.)*, 301 Or 622, 632, 724 P2d 805 (1986) (administrative agency cannot confer judicial review jurisdiction on a court where such jurisdiction does not otherwise exist; even if agency itself is estopped from denying that judicial review is available, court must make its own determination of jurisdiction in the particular case).

underlying order or judicial review of the board's order denying further administrative review, we grant the state's motion to dismiss the petition for judicial review.

Judicial review dismissed.

**ARMSTRONG, J.,** dissenting.

Implicit in today's opinion is the majority's desire to conserve judicial resources by avoiding the need to address the merits of what it believes to be meritless claims. To do that, it misinterprets the phrase "adversely affected or aggrieved" in ORS 144.335 to raise a jurisdictional bar to petitioner's claim. The interpretation that it gives that phrase is not one that it would give the phrase in any of the other Oregon statutes in which the phrase appears. Ultimately, if the statutes and rules as written create the potential for the waste of judicial resources, that problem must be resolved by the legislature or by the agency.

ORS 144.335 provides:

"(1) A person over whom the State Board of Parole and Post-Prison Supervision exercises its jurisdiction may seek judicial review of a final order of the board as provided in this section if:

"(a) The person is adversely affected or aggrieved by a final order of the board; and

"(b) The person has exhausted administrative review as provided by the board rule."

The statute sets forth three jurisdictional requirements for judicial review. First, the petitioner must be "adversely affected or aggrieved." Second, the petitioner's grievance must be caused by a "final order of the board." Third, the petitioner must exhaust the administrative remedies provided by board rule.

By order dated August 22, 2001, the Board of Parole and Post-Prison Supervision (the board) set petitioner's parole release date for October 29, 2004. Petitioner exhausted his administrative remedies with regard to that order and sought judicial review. We affirmed the order on review without writing an opinion in the case. *Wilcox v.*

*Board of Parole,* 192 Or App 673, 89 P3d 688 *rev den,* 337 Or 282 (2004).

While review of the August 22, 2001, order was pending before us, the Ninth Circuit decided *Himes v. Thompson,* 336 F3d 848 (9th Cir 2003), which took the board to task for violating a prisoner's rights under the federal Ex Post Facto Clause. Believing that he had suffered the same *ex post facto* violation as the plaintiff in *Himes,* petitioner asked the board to reopen his case and reconsider his release date. He sought to avail himself of OAR 255-080-0012(2), which allows the board to open a case for reconsideration "without regard to time limits." Petitioner argued that the *Himes* decision constituted pertinent information not available to him or the board at the time of the hearing. On March 2, 2004, the board issued an order that denied petitioner's request to reopen his case because, among other things, it did not interpret *Himes* to apply to petitioner. Petitioner seeks judicial review of the order denying his request to reopen his case.

The majority grants the board's motion to dismiss the petition for review for lack of subject matter jurisdiction because it fails to see how petitioner was adversely affected or aggrieved by the board's March 2004 order.[1] The majority

_____

[1] The board also argued in its motion to dismiss that petitioner was not seeking review of a "final order" for purposes of ORS 144.335. Although there is case law that seems to support that proposition, the cases were decided under an earlier version of the statute. A key difference between that earlier and the current version of ORS 144.335 raises serious questions about the continuing vitality of those cases. Specifically, the earlier version of the statute did not require the exhaustion of administrative remedies. ORS 144.331 (1987).

The earlier statutory scheme, without mandatory exhaustion, presented petitioners a choice between administrative review and judicial review. Judicial review had to be sought within 60 days of the order, but there was no deadline for administrative review. Thus, prisoners who missed the window for judicial review could seek administrative review and then seek judicial review of the order denying administrative review. Essentially, such an action would render the 60-day time limit to seek judicial review a nullity.

At that time, much like today, we interpreted one of the jurisdictional requirements to solve the predicament. We held that board actions denying requests for administrative review were not "final orders" for purposes of the statute. *See, e.g., Cruz v. Board of Parole,* 53 Or App 263, 631 P2d 829, *rev den,* 291 Or 893 (1981).

Recognizing that the change in the statutory framework closes the "final order" door to it, the majority seeks to solve the problem another way. Faced with what it perceives as a statutory and regulatory scheme that allows inmates to abuse the system by seeking judicial review of the denial of successive

may not sense it, but its effort to conserve judicial resources sets mischief afoot. The phrase "adversely affected or aggrieved" is found in at least 12 other Oregon statutes.[2] To the extent that the opinion holds that an order must change the status quo in order to adversely affect or aggrieve a party, it could prove to be a lethal weapon against those seeking judicial review of agency decisions in a number of administrative contexts. Agency orders across the spectrum often do no more than "reiterate" the status quo. There being no logical reason to limit the majority's interpretation of "adversely affected or aggrieved" to the review of board orders, I fear that the majority is using a blunt instrument to solve a problem that requires a scalpel.

Petitioner was, in fact, adversely affected and aggrieved by the March 2004 order. He asked the board to reopen his case in light of an intervening Ninth Circuit opinion, which he believed had established that his rights under

reconsideration requests, the majority seizes on the statutory phrase "adversely affected and aggrieved" and tortures it to achieve its desired result. The "final order" solution was understandable and supported by the statute. The majority's solution is neither.

[2] *See* ORS 161.385(8)(a) (allowing persons "adversely affected or aggrieved" by final orders of the Psychiatric Security Review Board to seek judicial review); ORS 183.480 (allowing persons "adversely affected or aggrieved" by final orders of state agencies to seek judicial review); ORS 196.985(4) (allowing persons "adversely affected or aggrieved" by violations of state wetlands regulations to intervene in contested cases that impose civil penalties); ORS 197.830(4)(b) (allowing persons "adversely affected or aggrieved" by certain land use decisions by local governments to appeal to the Land Use Board of Appeals); ORS 215.416(11)(a)(A) (allowing persons "adversely affected or aggrieved" by county permitting or zoning decisions to appeal to the planning commission or governing body of a county); ORS 227.175(10)(a)(A) (allowing persons "adversely affected or aggrieved" by city permitting or zoning decisions to appeal to the planning commission or governing body of the city); ORS 279B.415(3) (allowing persons "adversely affected or aggrieved" by a public contracting agency's decision to seek judicial review); ORS 390.835(4) (allowing persons "adversely affected or aggrieved" by the grant or denial of a permit to fill or alter the banks of a scenic waterway to appeal to the Director of the Department of State Lands); ORS 468.067(1) (allowing organizations whose members are "adversely affected or aggrieved" by certain actions of the Department of Environmental Quality or the Environmental Quality Commission to seek judicial review of those actions in certain circumstances); ORS 468.110 (allowing persons "adversely affected or aggrieved" by final orders of the Environmental Quality Commission to seek judicial review); ORS 469.503 (allowing persons "adversely affected or aggrieved" by the selection of offsets by energy facility site certificate holders to petition the Energy Facility Siting Council for review); ORS 527.700(3) (allowing persons "adversely affected or aggrieved" by certain forestry operations to seek a hearing before the Board of Forestry).

the federal Ex Post Facto Clause had been violated. The board denied his request in the March 2004 order. As a result of that order, petitioner remained in prison, possibly for a longer period than he should have. If petitioner's interpretation of *Himes* is correct, the board's order effectively deprived him of his rights under the Ex Post Facto Clause. By any measure, that is an adverse effect.

It may be that petitioner's argument must fail on claim preclusion principles. It may also be that the Ninth Circuit opinion will not bear the weight that petitioner places on it. And it may be that the Ninth Circuit opinion is not the type of "watershed" rule of criminal procedure that courts must apply retroactively under the United States Constitution. The problem is that, under the majority opinion, we cannot find out, nor can we ever find out, whether this or any future petitioner is someone for whom a newly announced watershed rule *does* provide relief.

The board rules contemplate board action "without regard to time limits." OAR 255-080-0012(2). Here, the board took such an action and purported to deny petitioner's request to reopen and reconsider his case. However, for the board to state, as it does, that it denied the reconsideration is disingenuous. The order explicitly reconsiders petitioner's release date in light of *Himes*. In one breath it purports to refuse to reconsider the date, and in another it reaches the legal conclusion that the *Himes* decision is of no import to that date. The order tells petitioner that "the *Himes* decision applies only to those offenders who committed their crimes on or between July 19, 1978, and January 31, 1979. You committed your crimes on August 28, 1984." Thus, the board order explicitly ruled against petitioner on the Ex Post Facto Clause issue. That ruling adversely affected and aggrieved petitioner.

But the board insists that the March 2004 order "merely reiterates or maintains the status quo." To the extent that the status quo was petitioner's release date of October 29, 2004, that statement is accurate. But to the extent that petitioner's release date may have been unlawful, maintaining the status quo adversely affects and aggrieves him. The majority, in its quest for judicial economy, ignores that fact.

To the extent that dictionary definitions are helpful, I take no issue with the manner in which the majority defines the terms "adversely affected or aggrieved." However, petitioner is adversely affected and aggrieved under those very definitions. The board's order did "act upon" and "produce * * * [an] alteration in" petitioner. 197 Or App at 629 (internal quotation marks omitted). It rejected his claim that the board's earlier order was unconstitutional under federal law and altered his status from a prisoner with a colorable argument that his continued incarceration was unlawful to that of a prisoner without such an argument. Petitioner is one "whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment," *id.* (internal quotation marks omitted), because his right to avoid unlawful imprisonment may have been unlawfully restricted by the board's action. Few adverse effects that an agency could work on a person are more aggrieving than an unconstitutional deprivation of liberty.

Furthermore, the cases relied on by the majority are unavailing. In *Frey v. Board of Parole*, 151 Or App 267, 269-70, 948 P2d 738 (1997), *rev den*, 326 Or 350 (1998), we held that a petitioner who challenges an order that merely continued the post-prison supervision (PPS) period previously imposed on the petitioner was not aggrieved or adversely affected by that aspect of the order. There, the initial order, which extended the petitioner's PPS period to the end of his statutory sentence, was issued in November 1994. The petitioner did not challenge that order. However, in December 1994, after the petitioner had violated the terms of his PPS, the board issued a new order imposing a 90-day prison sanction. That order restated that, by operation of law, the petitioner would remain on post-prison supervision until the end of his statutory sentence. The petitioner challenged that aspect of the order, but, because the board had not taken any new action with regard to the PPS period, we held that the petitioner was not adversely affected or aggrieved by the later order with regard to the PPS period. *Id.* at 270.[3]

_____

[3] To add insult to injury, we so held twice. The petitioner had raised the same challenge to the same order in two distinct judicial review petitions. The other opinion is reported at *Frey v. Board of Parole*, 152 Or App 462, 950 P2d 418, *rev den*, 327 Or 173 (1998).

Whereas the challenged order in *Frey* addressed no new argument on the appropriate length of the PPS period, the challenged order here specifically rejects petitioner's argument based on new Ninth Circuit precedent. That new action makes all the difference, for it is precisely what adversely affects and aggrieves petitioner.

*People for Ethical Treatment v. Inst. Animal Care*, 312 Or 95, 817 P2d 1299 (1991), also does not support the majority's position. Although the crux of that case was whether the petitioner was adversely affected or aggrieved, the case turned on the *nature* of the petitioner's interest, not whether that interest was affected, adversely or otherwise, by the agency action in question. The petitioner in that case was a public interest group—People for the Ethical Treatment of Animals (PETA)—that challenged an order of the University of Oregon's Institutional Animal Care and Use Committee that approved a barn owl research project. *Id.* at 97. The court held that a person is adversely affected or aggrieved for purposes of ORS 183.480(1)—the Administrative Procedures Act—if the person shows one of the following:

> "(1) the person has suffered an injury to a substantial interest resulting directly from the challenged governmental action * * *; (2) the person seeks to further an interest that the legislature expressly wished to have considered * * *; or (3) the person has such a personal stake in the outcome of the controversy as to assure concrete adverseness to the proceeding * * *."

*Id.* at 101-02 (citations omitted). The court concluded that PETA could not show any of the factors because it was simply a member of the public seeking to enforce the agency's rules. *Id.* at 105.

*People for Ethical Treatment*, particularly the first factor quoted above, supports the majority's legal rule, with which I agree, that the petitioner must be adversely affected or aggrieved by the challenged final order. But that much is obvious from the face of the statute and, thus, is unremarkable. The case cannot and does not lend any support to the majority's conclusion that petitioner is not affected by the challenged order.

Finally, the majority cites *Teel Irrigation Dist. v. Water Resources Dept.*, 323 Or 663, 919 P2d 1172 (1996), for the proposition that an agency order that "merely reiterated" an earlier decision of the agency did not adversely affect or aggrieve the party subject to that order. Simply put, that is a misunderstanding of the rule from *Teel Irrigation Dist.* There, the court dismissed the petition for review not because the petitioner was not adversely affected or aggrieved but, rather, because a letter that "merely reiterated" an earlier decision was not a reviewable final order. *Id.* at 678. In fact, the case contains no discussion at all of what it means to be "adversely affected or aggrieved." Thus, it does not support the majority's conclusion that an order that does not change the status quo cannot adversely affect or aggrieve a person.

Having demonstrated that petitioner was adversely affected and aggrieved by the March 2004 order, I turn to the proper disposition of this case. In order to invoke our review jurisdiction, petitioner must show that the order on review was final and that he has exhausted his administrative remedies. Here, petitioner did not exhaust his administrative remedies with regard to the March 2004 order. That is, he did not follow the procedures in OAR 255-080-0005 for administrative review of the board's order that denied his request to reopen his case. Ordinarily, that failure would deprive us of subject matter jurisdiction and dismissal would be appropriate.[4] However, the notice that the board gave petitioner about his rights to seek review of the March 2004 order is fundamentally flawed. In all capital letters, at the bottom of the page, that order says: "YOU MAY SEEK JUDICIAL REVIEW OF THIS ORDER BY FILING A PETITION WITH THE COURT OF APPEALS WITHIN 60 DAYS OF THE

---

[4] It may also mean that there is no final order to be reviewed. OAR 255-080-0001(1) provides:

"A Board order * * * is not final for purposes of the time period within which to appeal to the Court of Appeals until the inmate/offender exhausts his or her administrative review remedies."

That rule at least raises the possibility that exhaustion is a requirement of finality. *See also Rickman v. Board of Parole*, 153 Or App 709, 712, 959 P2d 617 (1998), *rev den*, 329 Or 447 (1999) ("An order from the Oregon Board of Parole is not final and appealable until a petitioner seeks and the Board denies administrative review."). But in light of the notice defect in the March 2004 order, that question can remain unanswered.

MAILING OF THIS ORDER, PER ORS 144.335." Because that notice failed to tell petitioner that he first had to exhaust his administrative remedies before seeking judicial review, the rule of *Jenkins v. Board of Parole*, 313 Or 234, 243, 833 P2d 1268 (1992), requires us to remand this case to the board to give petitioner a notice that describes the appeal process accurately and affords him an opportunity to seek administrative review. The majority errs by granting the board's motion to dismiss. Therefore, I respectfully dissent.

Edmonds, Landau, and Schuman, JJ., join in this dissent.